Glen J. YOUNG, Appellant,

v.

EASTERN COAL CORPORATION et al., Appellees.

Court of Appeals of Kentucky.

Sept. 23, 1966.

Rehearing Denied Dec. 16, 1966.

Kelsey E. Friend, Friend & Mullins, Pikeville, for appellant.

Stuart E. Alexander, Louisville, William J. Baird, Baird & Hays, Pikeville, Robert Matthews, Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

By this appeal, Glen J. Young seeks to reverse the judgment of the circuit court which affirmed an order of the Workmen's Compensation Board denying Young's claim under KRS Chapter 342. Although other questions are presented, the basic

issue at bar is whether appellant Young has demonstrated by uncontradicted medical proof that he sustained a work-caused total permanent disability as the result of a heart attack (myocardial infarction).

The medical proof unanimously recognizes that appellant suffered a myocardial infarction on May 6, 1964, while he was engaged in the performance of his duties in the coal mine of his employer, appellee Eastern Coal Corporation. The Board, in its opinion, stated that "[A]ll of the medical testimony admits that the plaintiff did sustain a myocardial infarction on or about * * *" May 6, 1964. The Board's opinion pointed out that appellant would be entitled to prevail, by authority of Terry v. Associated Stone Co., Ky., 334 S.W.2d 926, and Grimes v. Goodlett & Adams, Ky., 345 S.W.2d 47, "* * * provided there is substantial evidence to indicate that the plaintiff's activities at work for the defendant caused or brought about or contributed to the myocardial infarction." However, the Board concluded that appellant had failed to "* * * prove by persuasive evidence to the satisfaction of the Board that there was any causal connection between the work performed by him immediately preceding his attack to justify a finding that there was any exertion or strain that precipitated or brought about the myocardial infarction. The medical testimony that the exertion might have, could have, or probably did precipitate the attack is therefore meaningless."

■ The appellant concedes that he may not prevail upon this appeal unless his claim is rested upon issues of law or facts not substantially in controversy. He contends that medical testimony adduced in his behalf adequately establishes that the myocardial infarction was work-connected and brought about his total disability—and that there is no evidence to the contrary. In such state of case the Board has no legal basis to deny the claim. Johnson v. Stone, Ky., 357 S.W.2d 844; Grimes v. Goodlett & Adams, Ky., 345 S.W.2d 47. We have

concluded that the appellant is correct in this contention and reverse the judgment.

The initial claim for compensation filed by appellant asserted that he was totally and permanently disabled by reason of silicosis, but omitted any reference to any alleged disability due to heart disease. At a hearing before the Board's Referee on August 25, 1964, appellant testified that he had sustained a heart attack on May 6, 1964, the last day he worked. Thereupon his attorney requested the Referee to permit an amendment of the claim to include the heart attack as a basis of recovery; this matter was referred to the Board, which permitted the amendment. It is apparent that appellant substantially abandoned silicosis-disability as a basis for recovery; he makes no claim here that he is entitled to an award by reason of any silicotic disability.

■ During the course of a deposition appellant gave before the Referee (prior to the amendment including heart disease as a basis for recovery) appellant was asked to recount his activities while working May 6, 1964. He responded that he had been engaged in his "usual duties." He recounted that he had "changed a tire on a buggy." Incident to that task he had been required to exert substantial physical effort, including the lifting of a heavy tire and tightly securing about twelve bolts. At a later date, and after the amended claim had been filed, appellant gave testimony to the effect that he had also repaired a "caterpillar chain" weighing about two hundred fifty pounds. Significantly, Dr. W. F. Clarke had just testified that appellant had given him a history of repairing the heavy chain. The record is silent as to when Dr. Clarke first examined appellant, so it is not discernible from the record whether the history had been reported to Dr. Clarke before or after appellant had first testified and omitted reference to the caterpillar chain incident. At this point it is appropriate to observe that the appellee employer presented evidence from a foreman which tended to contradict appellant's

evidence that he had worked on the chain. The foreman said that he always made a record of any breakdown in this type of equipment, and that his record does not indicate that such activity occurred on May 6, 1964. The same witness pointed out that his records did not disclose that a tire had been changed on a "buggy;" he admitted that a tire could have been changed without his knowing of its being done, but added that this would usually be reported to him later in the shift. It is obvious, we think, that the testimony of this witness is of a negative character—at least as to the "buggy" tire—and is not of such probative quality as to refute the positive evidence offered by appellant. In any event, in our view of the case, the point is not dispositive, particularly in light of the testimony of Dr. Henry W. Post.

■ Dr. Post, a recognized specialist in cardiovascular diseases, examined appellant at the request of the attorney for appellee, Special Fund. In his report to the attorney, which was read into the record, Dr. Post noted that appellant had related to him that he had "worked hard in the dust all night on the date" of the attack. Dr. Post's report and his testimony expressed his view that appellant had an underlying coronary atherosclerosis present for many years prior to the "actual acute insult" of May 6, 1964. To employ the words of Dr. Post:

"It would be my feeling that the set of circumstances described by the patient at the time of his attack was a precipitating factor in the acute episode but I would feel that there was significant underlying disease which was not clinically manifest prior to this acute insult."

In another significant portion of his testimony, Dr. Post related:

"Well, I think that these electrocardiograms substantiate the history given to us and we would certainly assume with this resolution of changes in the electrocardiograms that he did suffer an acute myocardial infarction at the time he stated."

The doctors who testified agreed, as is seen in nearly all of the cases of this type, that it is possible that the myocardial infarction could have occurred independently of appellant's work activities. However, no doctor testified that the infarction was *not* work-connected. In fact, Dr. David A. Perras, a witness for the appellee employer, responded as follows to a question as to what effect the May 6, 1964, infarction had upon appellant's disability:

"Well, in effect, it is such that what he was doing at the time apparently caused the demand made on the heart to exceed the blood supply and as a result he got a small heart attack out of it. It affected it to this point, to this extent, and marked in his mind the beginning of his heart disease. Whether it was actually caused in the sense he could have had this, this happened or these two events came together at the same time."

In this state of the record, the present case is ruled by the rationale expressed in Johnson v. Stone, Ky., 357 S.W.2d 844; Grimes v. Goodlett & Adams, Ky., 345 S.W. 2d 47; Terry v. Associated Stone Company, Ky., 334 S.W.2d 926. The affirmative evidence for appellant was not overcome by the mere negative statements that the infarction could have occurred independently of the work-activities. The factual situation at bar distinguishes this case from Roberts v. Owensboro Milling Co., Ky., 399 S.W.2d 466 and Kelly Contracting Co. v. Robinson, Ky., 377 S.W.2d 892.

■ Both Dr. Post and Dr. Clarke gave their medical opinions that the pre-existing atherosclerotic condition contributed half to appellant's total disability, and ascribed the other half of the disability to the myocardial infarction of May 6, 1964. There was no opposing proof on this point. In view of this evidence and KRS 342.120, the award for total permanent disability shall be apportioned 50% against the appellee employer and 50% against the Special Fund.

The judgment is reversed, with directions to enter a new judgment awarding compensation to appellant for total permanent disability, apportioned half against the appellee employer and half against the Special Fund.