Dorothy **HUDSON**, Widow and Admrx., etc.,
Appellant,

v.

Charles C. **OWENS**, dba, etc., Appellees.

Court of Appeals of Kentucky.

Feb. 28, 1969.

---

566

---

J. David Francis, Whayne C. Priest, Jr., Bowling Green, for appellant.

Harold D. Ricketts, Harlin, Parker, Ricketts, Lucas & English, Bowling Green, J. Keller Whitaker, Workmen's Compensation Bd., Frankfort, for appellees.

REED, Judge.

Estell Hudson's widow claimed death benefits under the workmen's compensation law by reason of his death from a heart attack. The Workmen's Compensation Board ruled that the death was noncompensable because it found that the attack did not arise from the employment. The circuit court affirmed the board's decision. The widow has appealed here.

Hudson was the manager of a cut-rate gasoline station. He was paid $1.00 an hour plus a percentage on the gasoline and oil sold. His duties consisted of pumping gasoline and selling oil. The station did not change oil or perform repairs. He was supposed to keep the station open for sixteen hours, Monday through Saturday, and twelve hours on Sunday. He had authority to hire other employees to assist in the work at his discretion. He normally worked eight hours a day and hired another man to work the additional eight hours for a period of several years. On Saturday, October 10, 1964, his assistant was injured. For the next eleven days Hudson worked both shifts, or sixteen hours a day, except for Sundays when he worked twelve hours a day. On October 21, he found someone to work six hours a day and after that he worked ten and one-half hours a day.

On October 26, Hudson was not feeling well and went to a doctor who told him he should go into the hospital immediately because of a serious heart condition. Hudson refused to take this advice, giving as his reason that he had to keep the station open. He went back to the doctor on October 28 and received the same medical advice. He persisted in his refusal to obey the advice. On October 30, two hours after he went to work, be became ill and was taken to a hospital emergency room where he suffered the fatal heart attack which gave rise to this litigation.

Hudson had a known prior heart ailment and had changed from heavy construction work to lighter service station work because of this heart condition. However, the testimony of his attending physicians indicates that his heart condition, a result of childhood rheumatic fever, was reasonably stable prior to the current and culminating episode. Dr. Scott, testifying in behalf of appellant, stated that the cause of death was a cardiac arrythemia; that Hudson should not have been working in any type of employment and that the employment he was pursuing at the time of his death contributed to the heart attack. Dr. Martin, also testifying in behalf of appellant, stated that in his opinion Hudson's work contributed to the attack. It was Dr. Martin's further testimony that Hudson should not have been working because he was too sick to be working. As a matter of fact, the doctor testified that Hudson shouldn't even have walked up the steps to a hospital bed. He should have been carried, as his condition was that serious. Dr. Rutledge, introduced by appellee, testified Hudson's condition necessitated reduced activity and rest and that any increased activity would have demanded a greater response by the decedent's heart and could have contributed to his death.

The board found from the evidence that the heart attack was caused by the natural

progress of Hudson's pre-existing heart disease. It found that the serious illness resulting from decedent's pre-existing condition began October 26, 1964, and extended over a period of days before he finally had the last seizure which resulted in his death. The board pointed out that the record was silent as to whether he was at work when he became ill on October 26. The record did disclose that on the afternoon of the 29th he was ill at the time he left work and that he was at work on October 30 when he was taken to the emergency room. The board made a specific finding that the decedent's death was not caused by his employment nor was it caused by a work-connected event. It, therefore, dismissed the claim for compensation.

Appellant relies principally upon the decisions in our cases of Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47; Young v. Eastern Coal Company, Ky., 408 S.W.2d 464; and Trailer Convoys, Inc. v. Holsclaw, Ky., 419 S.W.2d 563. She claims that the proof in the instant case requires reversing the board's findings as to causation.

This court is again faced with the problem of the compensability under our workmen's compensation law of a heart attack suffered during working hours. Furthermore, the case is made more complex by reason of the fact that the medical evidence indicates that there were two causes of death. The first and primary cause was a pre-existing diseased heart condition, and the secondary cause from a medical standpoint was stress and exertion present during the performance of employment by the deceased.

In view of the importance of the problem, the increasing prevalence of cardiac disease compensation claims, and the divergent views of respectable authorities concerning their compensability, we have concluded to re-appraise the law in this jurisdiction applicable to the situation presented.

First, considering the matter from the standpoint of general principles, we are confronted with the proposition that we are dealing with the interpretation of a statute of social legislation designed to compensate injured workmen which contains a legislative mandate that it is to be liberally construed as a matter of law in favor of the injured employee.

◼️ Secondly, the legislative intent is clearly enough expressed so as to be binding upon us that pre-existing disease is not to be used as a shield against any liability for a work-connected injury by the employer of a workman who suffers from such condition. In short, there is no statutory basis for treating pre-existing heart disease in a different category from any other form of pre-existing disease. As to resolving issues of fact, the statute vests that function in a board with judicial review restricted to a determination of whether the factual findings of the board are "clearly erroneous."

◼️ Although there is diversity of opinion about the matter, the majority of the court is committed to the rule as stated in Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47, and repeated in all of our cases considering the matter subsequent thereto that where the physical effort of a man's work precipitates his internal breakdown resulting in disablement, he has sustained a compensable personal injury within the meaning of our compensation law. Once a condition is accepted as a personal "injury" it is necessarily accepted as traumatic. Therefore, we need not pursue this facet of the problem further, as it now appears to be the current settled construction of the compensation statute which is binding on this court.

The basic feature of the rule established by Grimes v. Goodlett and Adams, supra, and followed and applied in the cases subsequent to it is that the problem presented in these cases is one of determining *causation*. The problem is considered by Professor Larson, an outstanding authority in

the field, in a law journal article entitled "The Heart Cases in Workmen's Compensation" 65 Mich.L.Rev. 441. The first point made by this authority, in reviewing the results in many jurisdictions in heart attack cases, is that medical cause and legal cause do not have a common meeting ground. The legal profession and the medical profession view causation problems from different perspectives. The physician defines cause in terms of single and isolated bits of scientific exactitude. The lawyer views cause as a vehicle for adjusting losses in accordance with policy conditions which are embodied in social legislation such as our workmen's compensation law.

■ It appears that if medical certainty is ever achieved in the field of cardiology, which is not the case at the present time, this happy state of affairs will surely not solve the case where a workman's pre-existing heart disease irrespective of its cause has advanced so far that strain, or some other incident of the employment, becomes the final straw which destroys the victim's ability to work or causes his death. Even if science should some day prove conclusively that usual strain, or even unusual strain, does not produce heart disease, it is probable that most physicians will still agree that the various facets of a workman's job can bring an advanced stage of heart disease to its climax. In such cases, the policy question will still be present, to-wit, at what point for compensation purposes shall the element of work-connection be viewed as de minimis and the cardiac disability held to be merely coincidental with, rather than "caused" by, the work-connected event? This question of causation in our opinion is a factual determination to be made by the board constituted by our compensation law to determine factual questions presented in compensation claims. It seems to us that the job of the medical witness is to testify to the presence or absence of causation from the medical standpoint, and it is the job of the board to declare whether or not, con-

sidering the medical evidence and the other relevant factors present, the situation of a work-connected injury is present. See McNiece, "Heart Disease and the Law," pages 128–138.

■ The medical evidence, although relevant and material, must be considered not as determinative but rather as a part of the totality of circumstances upon which the board must make the factual determination of whether or not the work-connection was de minimis and the cardiac disability merely coincidental with rather than caused by the work-connected event. In the event the board finds no work-connected cause, then the employer is not liable for compensation. In the event the board finds that the disability, death or injury was caused wholly by the work connection, then the employer will be liable to compensation in full. If, however, the board finds the disability, injury or death was caused only partially by the work connection, then compensation for which the employer is liable should represent only the contribution of the work connection to the disability. In other words, the apportionment as provided in Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 shall continue in accordance with the principles stated therein.

■ We reject the so-called "usual" and "unusual" strain test, nor are we concerned with exercises in semantics over the word "accidental." Accidental result is enough to constitute an accidental injury.

■ In short, a fortuitous unexpected injury to the workman, traceable to the performance of his work, is sufficient to provide the accidental quality demanded by our compensation statute.

■ Hence, we have concluded that the basic approach in this jurisdiction represented by Grimes v. Goodlett and Adams, supra, is a sounder one than that recommended by Larson in his discussion which we have previously cited. However, in Grimes and in Johnson v. Stone, Ky., 357 S.W.2d 844, Young v. Eastern Coal Com-

pany, Ky., 408 S.W.2d 464, and Trailer Convoys, Inc. v. Holsclaw, Ky., 419 S.W.2d 563, we were not squarely confronted with the proposition as to whether or not medical evidence alone, whether contradicted or uncontradicted, was absolutely binding on the board concerning the issue of causation in these cases. If we gave the impression that it was, we hasten to correct that impression now. In our view, the situation is somewhat analogous to that presented when a physician undertakes to evaluate a compensation claimant so far as disability is concerned. If the physician, as is so often done, takes basically a medical approach and awards a percentage rating of functional disability, we require the board as a fact-finding body to translate medical functional percentage of disability into occupational disability. In that instance, the medical evidence is competent and relevant so far as it goes, but it is neither determinative nor controlling. The assessment of occupational disability is a factual determination and is a legal concept. Functional disability is a medical concept. Causation in these heart attack cases is a factual determination based on a legal concept for the purpose of determining whether or not the work shall be deemed as the legal cause of the disability or as only the stage on which the inevitable tragedy occurred, so that the cardiac disability is merely coincidental with, rather than legally caused by, the work-connected event.

 The determination made by the board of this issue of causation on all relevant evidence, including the medical evidence, may then be tested in accordance with our accepted principles of judicial review which are plainly expressed in our compensation law and which this court has consistently followed. The claimant has the burden of proof and the risk of persuading the board in his favor. If the board finds against the claimant, the proper issue, so far as factual findings are concerned on judicial review, is whether the claimant's proof was so strong as to *compel* a finding in his favor—so persuasive

that it was clearly unreasonable for the board not to be convinced by it. See Kavanaugh v. Atlas Tack Corp., Ky., 432 S.W.2d 399. If, on the other hand, the board makes a factual finding in favor of the claimant, then such finding will be binding on judicial review if it was supported by substantial evidence. Lookout Coal Co. v. Williams, Ky., 424 S.W.2d 591.

To the extent only that Grimes v. Goodlett and Adams, supra, and our other cases following and cited herein might be taken to indicate views inconsistent herewith, they shall be considered modified.

In the instant case, the board recited the evidence on which it based its finding against the claimant. This evidence included the circumstances of the onset of the heart attack, the character of the work involved, the serious condition of the victim and the vagueness of the final circumstances of his seizure. In this case the board actually decided as a matter of fact that the totality of the evidence, both direct and circumstantial, established that the work connection should be viewed as de minimis and the decedent's cardiac disability was merely coincidental with, rather than caused by, a work-connected event.

 Since the board found against the claimant who had the burden of proof and the risk of persuasion, we are confined to determining whether or not the total evidence was so strong as to compel a finding in claimant's favor. It appears to us that the evidence on the issue was not so strong as to compel such a finding, nor can we characterize claimant's evidence as so persuasive that it was clearly unreasonable for the board not to be convinced by it. Hence, the finding of the board as to this factual issue of causation must be considered binding.

Trailer Convoys, Inc., v. Holsclaw, Ky., 419 S.W.2d 563 is overruled to the extent that it arrives at a result inconsistent herewith.

The judgment is affirmed.

All concur.