**PARKER SEAL COMPANY, Appellant,**

**v.**

**Harold L. RUSSELL and Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

Oct. 20, 1972.

Rehearing Denied Dec. 15, 1972.

Armer H. Mahan, Jr., Louisville, for appellant.

Irwin H. Cutler, Jr., Louisville, J. Keller Whitaker, Director, Workmen's Compensation Bd. of Ky., Frankfort, for appellees.

OSBORNE, Justice.

Appellee, Harold L. Russell, is 39 years of age. He attended college one year. Since college he has held many different jobs. Generally speaking, though, his skill lies in the field of machinery repair or what is commonly referred to in industry as maintenance man. He worked in this field for Corning Glass Company of Danville, Kentucky, for 14 years and for appellant here, Parker Seal Company, in Lexington, Kentucky, from 1965 to 1967. He took another job in 1967 and returned to Parker Seal Company in January of 1969, where he worked until June of 1969. He was terminated at Parker Seal because of trouble between him and his supervisor.

On February 26, 1970, he filed a claim with the Kentucky Workmen's Compensation Board in which he alleged he was injured while an employee of Parker Seal Company on April 20, 1969. Question six on his application reads, "How did the accident or disease occur? Describe in detail." His answer was, "From the coal and breathing vapors of liquid nitrogen." Question seven on his application reads, "Nature of injury or disease. Describe in

detail." His answer here is, "Injury to respiratory system and nervous system."

Russell's proof before the Board is to the effect that on the evening of April 20, 1969, he was working in a refrigerated room where extremely cold temperatures were maintained; that the employee who was supposed to have remained at the door to release him left and he passed out from the extreme cold. As soon as he was discovered, he was taken to the hospital but did not remain overnight; he was subsequently seen by Doctors Cull and Hyde of Lexington on two different occasions and discharged. He contends that after the incident he became nervous and started to drink heavily, whereas prior to the incident he was only a social drinker. Subsequent to the incident, he was hospitalized on several different occasions. The hospital records as they relate to his stated condition can be summarized as follows:

"(a) St. Joseph Hospital

(1) History given to Dr. Rompf on December 14, 1969; 'The patient gives history of having depressed spells off and on since 1965 but the depression became worse and almost continuous during the past month.'

He admits that he has had depressed spells off and on since 1965 over his economic situation but the depression has become continuous during the past month.

(2) From notes of J. Worley, R.N., of December 14, 1969; 'According to patient has been drinking everything he could for about 2 weeks.'

(3) From history to Dr. Rompf obtained on May 6, 1970; 'About one week ago, the patient began worrying about financial problems, became tense and anxious and began having difficulty in sleeping.'

(4) From notes of B. Dansby of May 6, 1970; 'Patient states he has been drinking heavily for over a week about 3 pints a day.'

(b) Eastern State Hospital

(1) From history taken by Dr. Ibayan on July 1, 1970 (one year following accident); 'The patient has been drinking on and off for nine years. Lately, for the past two years, he has been drinking heavily.'

(2) From social service notes of Mary McDonald ACSW (accredited-certified social worker), of July 8, 1970; 'Patient at Social Service Office. He is nervous and worried over job and family. He says he has had so many difficulties since moving to Lexington . . . . Patient says Lexington and city life made him nervous and he started drinking in evenings in order to relax . . . .' "

Russell introduced some fellow employees who testified that subsequent to the incident he appeared to be more nervous than usual. Only one doctor testified before the Board. This was Dr. John J. Wernert, Jr., of Louisville, Kentucky. Dr. Wernert's specialty is psychiatry. He testified that he examined Russell on September 1, 1970, giving him the usual type of psychiatric examination and diagnosed his case as being one of passive aggressive personality. He stated that Russell believed that there was a connection between his illness and the accident suffered while working for Parker Seal. Further on in his testimony Dr. Wernert in describing Russell's condition stated:

"A. This can be a combination of anxiety and depression with a great deal of what people might call quarrelsome or behavior on the part of the patient. Maybe difficult to get along with and so forth and this might be—he may manifest any number of symptoms." (sic)

He was then asked, "Okay, Doctor, do you have an opinion as to the cause of the anx-

iety or depression which you described and which Mr. Russell described to you?" He answered:

"The patient and this is the important thing, the patient believes that there is a relationship between his illness and his accident."

Nowhere in his testimony did Dr. Wernert express a medical opinion that the claimed incident at Parker Seal is or was the cause of Russell's present nervous condition.

The Board entered an award for $49 a week from April 20, 1969, to May 20, 1969, and $6.50 a week from May 10, 1969, for a period of 400 weeks. The Board's opinion recites its findings as follows:

"It appears that Plaintiff was a rather steady worker prior to his traumatic experience on April 20, 1969, who drank fairly heavily, but his drinking did not effect his employment. After his accident, his drinking has been stepped up to the point that it does effect his employment. His work record as well as his hourly wage has suffered since the accident. We are of the opinion that his traumatic experience of nearly freezing to death has effected his mental condition which in turn has reduced his future earning capacity." (sic)

Appellant, Parker Seal Company, most seriously contends upon this appeal that the appellee has not established any reasonable factual or medical connection between his excessive drinking habits and the accident suffered while he was employed by it. In support of its contention it cites Markwell and Hartz, Inc. v. Pigman, Ky., 473 S.W.2d 842; Hudson v. Owens, Ky., 439 S.W.2d 565, and other cases. Appellee attempts to avoid the application of these cases by insisting that this case has more supporting circumstantial evidence than was present in the Markwell and Hartz case, supra.

██ It has long been accepted that questions of fact, as well as the question of causation, are usually for the Workmen's Compensation Board. Rogers v. Deposit Service Corp., Ky., 410 S.W.2d 621; Blair Fork Coal Co. v. Blankenship, Ky., 416 S.W.2d 716. However, as pointed out in the Blair Fork case, supra, findings must be supported by some substantive evidence. A possibility of causal connection is not enough to support a finding of such connection as a fact. Hudson v. Owens, supra. Factual situations can become so involved as to render the task of determining whether fair-minded men might deduce a certain conclusion from them almost impossible. In cases such as the one presently before us the determination of whether there is any substantive evidence to support the conclusion of the Board resolves itself into a value judgment. For it to be said that Russell's present nervous condition and drinking habits are a result of his passing out in the room would, in our opinion, require a great assumption. For this fact has not been proven. True, he did prove that he did pass out in the room. He did, by his own evidence, establish that after he passed out in the room he became more nervous. He did by Wernert prove that he, Russell, thought this nervousness was the result of passing out in the room. We do not believe this is sufficient to establish cause and effect. We believe this case is controlled by Markwell & Hartz, Inc., v. Pigman, supra.

The judgment is reversed.

All concur.