ARMCO STEEL CORPORATION,
Appellant,

v.

Nora LYONS, Widow of Clarence L. Lyons, Deceased, and Next Friend of Catherine Lyons, Age 17; James R. Yocom, Commissioner of Labor and Custodial of the Special Fund, and Workmen's Compensation Board of Kentucky, Appellees.

Court of Appeals of Kentucky.

Feb. 17, 1978.

William H. Jones, Jr., Lowell T. Hughes, Van Antwerp, Hughes, Monge & Jones, Ashland, for appellant.

Michael R. Dowling, Ashland, for appellee Lyons.

Cyril E. Shadowen, Dept. of Labor, Louisville, Kenneth E. Hollis, Dept. of Labor, Frankfort, for appellee Yocom.

Before HOWERTON, COOPER and HAYES, JJ.

HOWERTON, Judge.

This is a workmen's compensation case. Appellant was the employer of appellee's now deceased husband, Clarence Lyons, who suffered an episode of ventricular tachycardia shortly after reporting to work on March 8, 1973. The employee died on March 13, 1973 from further heart problems while he remained hospitalized in Ashland, Kentucky.

The deceased had been employed by appellant for approximately 18 years. In October 1972, Mr. Lyons suffered a severe

myocardial infarction at home. He returned to work as a tow-motor operator on February 18, 1973. This type work was described by the plant physician as being similar to operating an automobile or a tractor.

Appellee filed her claim with the Workmen's Compensation Board in January 1974, alleging that her husband died as a result of his employment with Armco. The appellee, Special Fund, was joined as a party because of the defendant's preexisting heart condition.

On May 3, 1976, the Board rendered its opinion and award. The Board awarded Nora Lyons weekly benefits in the amount of $60.25 as widow of Clarence Lyons, and the sum of $20.25 per week as the next friend of Catherine Lyons, infant daughter of the decedent. The Special Fund was directed to pay one-half of the award. The employer was also directed to pay the medical expenses and the sum of $1500.00 for burial expenses. The Greenup Circuit Court affirmed the award.

The appellee, Special Fund, has submitted its brief which generally supports the positions taken by the appellant, but the Fund failed to appeal the Board's decision to the circuit court, and it is therefore precluded from any relief on this appeal. It does request, however, a reversal of the judgment as to the employer, and a direction by the court to the Board "to dismiss the Special Fund in the future where the claimant had a previous heart condition known to him and to his physician that arose prior to any work-related incident that gave rise to a compensation claim."

Three of the findings by the Board constitute the basis for the Board's award and the errors claimed on this appeal. The three findings read in full as follows:

.    .    .    .    .

2. The plaintiff's decedent, Clarence L. Lyons, deceased, was 43 years old at the time of his death on March 13, 1973. The plaintiff and decedent were married in 1953 and were living together at the time of his death. In October 1972, the dece-

dent had a massive heart attack and was hospitalized. He remained in the hospital until November 10, 1972, and was off of work until about February 26, 1973. The decedent worked for about one week and a half, and then had another attack (apparently of heart failure and arrhythmia) at work on March 8, 1973. The Board finds the second attack to be work-related and to arise out of and in the course of plaintiff's employment. *Moore v. Square D Company*, Ky., 518 S.W.2d 781. This was a "fortuitous, unexpected injury traceable to the work by virtue of having occurred in the course of the work". His demise was set off by the attack at work, no matter if he died of arrhythmia of the heart or congestive heart failure.

.    .    .    .    .

5. Plaintiff probably had a disability when he went back to work. There is a question in the evidence if he should have been working although his doctors had released him to work. The Board finds he was not limited in his occupation. The Court of Appeals has previously indicated this argument is somethink [sic] of a "red herring" in a case not to be cited as authority. This issue is questionable in this case, but from what we can find on it, it appears the Supreme Court will not say there has to be an exclusion for it, especially when the decedent is working.

.    .    .    .    .

7. The decedent had atherosclerotic coronary heart disease which was dormant and occupationally non-disabling, and was aroused into disabling reality by the incident of March 8, 1973. The Board cannot find any medical evidence where the doctors apportioned responsibility. The Board has the right to fix the relative contributions of the preexisting disease and the incident where the doctors do not. *Ed Hall Drilling Co. v. Profitt*, Ky., 424 S.W.2d 403. We apportion liability 50% on the Special Fund and 50% on the employer.

Appellant presents three arguments. The first argument is generally concerned with the test or requirement of legal causa-

**678**

tion between the activities of the work and a disabling or fatal heart attack. The second issue questions the Board's failure to assign a percentage of the decedent's disability to a prior active heart condition. The third and final argument contends that the Board's apportionment of disability was clearly erroneous in that there was no proof to support such a finding or award.

■ For its first argument, appellant alleges that there was no substantial evidence in the record to find that the work caused the employee's death. The Board's findings on this point are contained in Finding # 2, quoted above.

Finding # 2 does conclude that death "was set off by the attack at work . . ." The evidence in the record is, at best, very weak on this point, and the Board found simply that the heart attack was work-related, because the employee was on the job when the attack occurred. The Board cited the case of *Moore v. Square D Company*, Ky., 518 S.W.2d 781 (1974) in support of the finding. The finding that the attack occurred while at work is accurate, but we must consider whether or not *Moore, id.*, supports such a conclusion that the attack was caused by the work. Two other questions which are necessarily intertwined with our review of this issue are what proof of causation is required in heart attack cases, and what are this Court's limitations on judicial review?

The two leading cases which are most dispositive and informative on the issues just presented are *Moore, id.*, and *Hudson v. Owens*, Ky., 439 S.W.2d 565 (1969). *Hudson, id.*, provides the most thorough explanation of the law in heart attack cases, and it remains the law in Kentucky as of today, except as it has been modified by subsequent cases, including *Moore, supra.*

Lyons, Hudson and Moore had heart attacks while at work. Lyons and Hudson had suffered previous attacks and therefore had known, preexisting conditions. Moore had his first attack while at work. Hudson's medical proof indicated a causal relationship between the work and the attack. The medical proof in *Moore, supra*, and the

case sub judice was against a finding of a work-caused relationship. Since there was no proof of medical causation on behalf of Moore or Lyons, there was no proof as to apportionment, which proof would be necessary if the Special Fund was to share in the liability. Hudson's widow was denied compensation, while the widows of Moore and Lyons were awarded compensation by the Board.

In *Hudson, supra*, the court makes it clear that, "As to resolving issues of fact, the statute vests that function in the Board with judicial review restricted to a determination of whether the factual findings of the board are 'clearly erroneous'." *Hudson, supra*, at p. 568. In affirming the Board's negative finding of causation, the court concluded, "It appears to us that the evidence on the issue was not so strong as to compel such a finding, nor can we characterize claimant's evidence as so persuasive that it was clearly unreasonable for the board not to be convinced by it." *Hudson, supra*, at p. 570.

The problem presented in all of these cases is one of determining causation. *Hudson, supra*, at p. 568. As to a finding of causation, the opinion concluded that where the physical effort of the work precipitates an internal breakdown resulting in disablement, the employee has sustained a "personal injury" which is automatically accepted as "traumatic". *Hudson, supra*, at p. 568. The court rejected the "usual" and "unusual" strain test for a determination of "accidental," and concluded that an "Accidental result is enough to constitute an accidental injury." *Hudson, supra*, at p. 569. As to the required accidental quality of the injury, *Hudson, supra*, reads at p. 569:

> In short, a fortuitous unexpected injury to the workman, traceable to the performance of the work, is sufficient to provide the accidental quality demanded by our compensation statute.

It was this statement regarding the accidental quality required for a compensable injury that was paraphrased in *Moore, su-*

*pra,* and again in the Finding # 2 of the Board in the case at bar. The portion of the statement as quoted from *Moore, supra,* in the findings is nothing more than a phrase taken out of context. When read as a whole, *Moore, supra,* 518 S.W.2d at p. 784, was referring to the need for proof of a traumatic injury by accident, and that in a heart attack case, the accidental quality portion of causation is met if the unexpected injury occurred during the course of the work.

*Moore, supra,* does not, and cannot, stand for the proposition that a heart attack is work-related if it occurs while the employee is at work. A claimant is still required to prove a work-connected cause from the totality of the circumstances. We can conclude from the fact that Hudson's fatal heart attack occurred on the job that one does not sustain a compensable heart attack merely because he was "at work" when the attack occurred.

We may be required to give a liberal interpretation to our workmen's compensation statutes, but Kentucky has already frightened away many existing and would-be employers with previous enactments and interpretations. This court is not going to send the remainder of them running with a ruling that an injury (heart attack) is compensable if it merely occurs at work without other proof that it was work-caused. Workers must be compensated for injuries and diseases caused by the work they perform. This is a legitimate cost to the employer and his product or service. But, there must be proof of causation by the work, and more proof is required than having a job and being on the employer's premises when a heart attack occurs.

While we may be limited in our review of the Board's findings, we must conclude in this case that the limited findings of the Board do not support the award. The Board had no evidence of causation other than presence at the job site, and its finding or conclusion of causation is therefore clearly erroneous.

Opinions and awards of the Workmen's Compensation Board often present the court very limited findings to support the conclusions and the award. The Board would do well to consider the opinion of the court in *Hudson, supra,* as it discussed considerations which should be made in heart attack cases. For one thing, the court's opinion in *Hudson, supra,* 439 S.W.2d at p. 569 reads:

> In such cases, the policy question will still be present, to-wit, at what point for compensation purposes shall the element of work-connection be viewed as de minimis and the cardiac disability held to be merely coincidental with, rather than 'caused' by, the work-connected event?

In the case sub judice there was apparently no consideration whatsoever of this issue. The court's opinion also indicates that the determination of causation must be made from the "totality of circumstances". *Hudson, supra,* at p. 569. This includes medical evidence as well as other relevant, factual information.

In *Moore, supra,* the court determined that the Board did look at the totality of the circumstances, even though there was no medical proof to establish the connection of the work to the heart attack. Unlike the case on this appeal, however, the Board in *Moore, supra,* did make specific findings of causation. The medical proof was held to be only a part of the total evidence. The Board, in *Moore, supra,* specifically found that:

> 1) The attack occurred during the course of his work after 6½ to 7 hours of comparatively heavy work; 2) He previously had been able to perform his work without substantial interruption, and this was his first heart attack.

*Moore, supra,* therefore, did not vitiate the requirement that a heart attack both arise out of and occur in the course of the claimant's employment. Both *Moore, supra,* and *Hudson, supra,* involved disabilities which occurred prior to the effective date of amendments enacted by the 1972 General Assembly. The statutory test for compensability which is applicable to the present claim is stated as a "work-related, harmful change in the human organism" [KRS 342.-

620(1)], rather than the earlier "traumatic personal injury sustained by the employee by accident . . . arising out of and in the course of his employment" [KRS 342.-005(1)]. The change in the statutory language is one of form rather than substance, however, as was demonstrated in *Seventh Street Road Tobacco Warehouse v. Stillwell*, Ky., 550 S.W.2d 469 (1976), where it was stated, at p. 470, that, " '[W]ork-related' and 'arising out of and in the course of [the] employment' are synonymous terms."

We must conclude as to the first issue that the Board failed to apply the correct standard to determine whether the present heart attack was caused by the work in the sense that it arose out of and occurred in the course of the decedent's employment.

The second and third issues are somewhat related and will be discussed together. The appellant argues that Clarence Lyons clearly had a disability preexisting March 8, 1973, and the percentage of that disability should have been determined and deducted from any award levied against the employer. Appellant also contends that it was error to apportion the award on a 50–50 basis between it and the Special Fund, as there was no evidence to determine such an apportionment.

■ The two findings by the Board relating to these issues are Findings # 5 and # 7 which were quoted above in full. The findings actually conflict in part. Finding # 5 begins, "Plaintiff probably had a disability when he went back to work." Finding # 7 reads, in part, "The decedent had atherosclerotic coronary heart disease which was dormant and occupationally non-disabling . . . ." We can only conclude from the findings and from the record, as a whole, that error was committed by the Board, and by the circuit court in affirming the Board, both as to the findings and as to the resulting award.

The facts are overwhelming that Clarence Lyons's October heart attack caused permanent heart damage, and although he had been permitted to return to work, he had at least a 40% disability. The mere fact that an employee is able to work is not conclusive that the employee has no occupational disability. *Griffin v. Booth Memorial Hospital*, Ky., 467 S.W.2d 789 (1971). He was under a doctor's care after his return to work, and he continued to take regular medication for his condition. He also carried nitroglycerin tablets and other medication for emergencies. Any findings to the contrary would be clearly erroneous. A person who has a disease condition known to him, and who is being treated medically for that condition, does not have a dormant, nondisabling disease condition. *Young v. Pugh*, Ky., 463 S.W.2d 928 (1971).

■ Likewise, there was no proof in the record to support any apportionment between the employer and the Fund. The Board obviously determined that an equitable solution would be to permit each defendant to share the cost on an equal basis. The apportionment part of the findings was added to the typed opinion in handwriting.

A similar situation existed in *Moore, supra*, where the medical proof had not supported causation. The opinion of the court reads, 518 S.W.2d at p. 785:

> The question of apportionment was not in the case until the board, despite the medical testimony, found that the work was a causative factor. After making that finding, the board should have caused [the] medical evidence to be produced on the question of apportionment.

This point is moot in this case because of the other determinations made in this opinion, but it is valuable for some clarification of the law for the benefit of the Workmen's Compensation Board in future, similar cases.

■ As to the question of a preexisting disabling disease condition, the appellee, Special Fund, should have had no liability. KRS 342.120. It was proper to join the Fund as a party. KRS 342.120(1)(a) or (b). However, the Fund is not liable for the active disability of a preexisting disease. KRS 342.120(4). But, in this action, the Fund must pay the 50% award levied against it because it failed to perfect an appeal. *Yocom v. Tri-County Sanitation Service, Inc.*, Ky., 522 S.W.2d 850 (1975).

As to appellant's argument that the preexisting disability should have been determined as a percentage and deducted from any final award, we will have to first examine the current status of the law on this point. Actually, the whole question of apportionment and deductions originates in KRS 342.120. Subsection (3) provides that " . . . [T]he employer shall be liable only for the degree of disability which would have resulted from the latter injury or occupational disease had there been no preexisting disability or dormant, but aroused disease or condition." Subsection (4) then requires the remaining part attributable to the arousal of a dormant disease to be paid by the Special Fund. Subsection (4) specifically excludes, " . . . all compensation which the provisions of this chapter would have afforded on account of prior disabling disease or injury had it been compensated thereunder, . . . ."

■ Apportionments are thus required when a claimant has either a preexisting disability to be deducted from the claim, or when a dormant, nondisabling condition is aroused into disabling reality which is deductible by the employer, but paid for by the Special Fund. A situation may also exist when a prior disability is to be excluded and the remaining disability is apportioned between the employer and the Fund because of the arousal of a dormant condition in addition to the preexisting disability.

As to either type of apportionment, however, the Board must first determine if the later injury alone and independently would have caused the resulting disability. If so, no apportionment is necessary. *Young v.*

*Fulkerson,* Ky., 463 S.W.2d 118 (1971). For example, if an employee had either a preexisting disability and/or a dormant disease, and he was subsequently killed instantly by an explosion, the latter accident independently caused his death, and no apportionment would be necessary. The employer would be responsible for the entire claim.

The Board did not find, and we cannot say, whether any deduction should have been made for the preexisting disability. The Board's Findings # 5 and # 7 do not provide specific answers regarding the independence of the second heart attack in the cause of death, nor are there specific answers regarding apportionment for purposes of excluding part of an award for the preexisting disability.

It would certainly be to everyone's advantage, in the future, if the Board and the practicing Bar would provide more complete and specific findings of fact to support the conclusions of law and the award. Answers to all of the issues and policy questions discussed in this opinion should be considered in heart attack cases. This court cannot make such findings at this point in the proceedings, but in this case, the additional findings will not be necessary.

The case is reversed, with directions to the circuit court to remand the case to the Board for judgment dismissing appellee's claim against the appellant. The Board shall also be instructed to retain the award originally entered against the Special Fund.

All concur.