**Hershel ROBERTS, Appellant,**

v.

**Carter ESTEP; Special Fund; Thomas Shewmaker, *Administrative Law Judge*; and Workers' Compensation Board, Appellees.**

**No. 92–SC–481–WC.**

Supreme Court of Kentucky.

Jan. 21, 1993.

Rickey D. Bailey, Manchester, for appellant.

David L. Murphy, Louisville, for appellee Estep.

David Randall Allen, Cathy Utley Costelle, Labor Cabinet,—Special Fund, Louisville, for appellee Special Fund.

### OPINION OF THE COURT

Following a complete review of the record and the briefs filed in the above-styled appeal, we affirm the decision of the Court of Appeals upholding the Workers' Compensation Board. After careful consideration, we adopt the opinion of the Workers' Compensation Board in this case.

"BEFORE: ANGELUCCI, Chairman, and GREATHOUSE, Board Member.

"ANGELUCCI, Chairman. Hershel Roberts ("Roberts") appeals from an Opinion and Order rendered August 4, 1989 by Administrative Law Judge Thomas Shewmaker ("ALJ"). The ALJ concluded that Roberts' myocardial infarction was not caused by activities at work, and he therefore dismissed Roberts' claim. On appeal, Roberts contends that the ALJ's conclusion was not based on substantial evidence and that the ALJ used an incorrect standard in denying the claim. He also argues that there was an improper ex parte contact between counsel for Carter Estep, the last employer, and a treating physician, but this issue was neither listed on the prehearing order nor addressed at the December 8, 1988 hearing. Carter Estep has requested sanctions pursuant to KRS 342.310 and *Woolum v. Woolum*, Ky.App., 684 S.W.2d 20 (1984).

"Roberts was born on August 21, 1937 and has an eighth grade education with no vocational training. He testified that he has been a coal truck driver all of his adult life and that he had worked for Carter Estep for approximately a year prior to the incident in question. None of Roberts' jobs involved truck maintenance or loading, and he admitted that he had to do hauling over rough roads. Roberts smoked approximately a pack-and-a-half of cigarettes per day prior to his first heart attack and he continued to smoke approximately a pack per day following this incident. He denied any treatment for high blood pressure prior to the attack or any family history of high blood pressure or heart problems. The Board notes, however, that Dr. Moises Langub, a family physician, received a history that he or perhaps someone in his family did have a heart attack.

"The first attack occurred on March 22, 1988. Roberts testified that he was doing his normal job which involved driving a ten-wheeler between Stansbury and Manchester. Around 11 a.m., however, he received instructions to go to Perry County and haul auger coal. Roberts testified that this involved short hauls over very rough road close to the edge of a mountain and that it was very warm in the truck that day. Around 4 p.m., Roberts developed a burning sensation in his chest. He went home for a little while before going to a hospital, and he was subsequently transferred to the University of Kentucky Medical Center. Roberts underwent angioplasty in late March and underwent another surgical procedure in October 1988. He has never returned to work since the initial attack and does not feel that he could drive a coal truck.

"Dr. Jonathan L. Elion, a cardiologist at U.K., first saw Roberts in June 1988 and also reviewed records of Roberts' previous treatment. On March 28, 1988, Roberts' left anterior descending artery had complete blockage in its mid-portion, and an angioplasty was performed to open up the vessel. A repeat catheterization in June 1988 only showed minor irregularities. In his initial Form 107, Dr. Elion noted that:

> After reviewing Mr. Roberts' chart, history, and tests, it *does* seem likely that there was a pre-existing condition (coronary artery disease), and it is in the realm of reasonable medical probability that the stress and strain, exertion, and environmental factors related to his driving a truck over rough roads in the heat *was* a triggering factor in his heart attack. (emphasis, original).

"Upon cross-examination, however, Dr. Elion admitted that he had no first-hand knowledge of the environmental conditions, the condition of the road, or the physical or emotional stress imposed by driving a truck. He therefore provided the following, more detailed, testimony concerning causation:

> There exists the possibility that a patient with an underlying condition such as coronary artery disease may have a myocardial infarction precipitated by severe exertion, emotional stresses, or physiologic stresses such as prolonged exposure to extreme heat. Under normal circumstances, however, I would not think that the activities involved in driving a truck make that the most likely scenario. As I am not a lawyer, I am unfamiliar with all the nuances of legal jargon such as 'within the realm of reasonable medical probability.' I have interpreted this to mean 'is it possible?', in which case my

answer is 'yes.' If, however, this expression is intended to ask 'is that the most likely interpretation?', then my answer would have to be 'no'.

"Dr. David Booth, a cardiologist, first saw Roberts on October 16, 1988 after an electrocardiogram was consistent with acute anteroseptual infarction. Roberts was initially treated with a nitroglycerin drip and medication, and he underwent by-pass surgery on October 21, 1988. Dr. Booth also noted that Roberts had continued to smoke following his first attack. While Dr. Booth admitted that truck driving could have been a factor in the first attack, the subsequent attack was most likely caused by restenosis, which is an adverse bodily reaction to the angioplasty. He also said that smoking was a definite factor.

"Dr. Langub examined Roberts on November 16, 1988 at Roberts' attorney's request and received complaints of chest pain. Roberts was also wheezing, and Dr. Langub referred him to a cardiologist. He concluded that Roberts' job on March 22, 1988 was a contributing factor to the initial attack, even though this was the same type of driving he had done for a long time.

"Dr. John E. Myers, Jr., who specializes in internal medicine, examined Roberts on July 22, 1988 at Carter Estep's request. While he found Roberts to have a 60% impairment to his body as a whole because of the heart problems, Dr. Myers concluded that the attack was not related to his employment.

"The ALJ reviewed this evidence and made the following finding:

5. As typical, there is conflicting evidence presented by the plaintiff and the defendants as to the causation of the claimant's heart attack. As in all heart attack cases the totality of the circumstances must be reviewed in order to determine if there is a causal relationship between the claimant's work activity and the heart attack, *Moore v. Square D Company*, Ky., 518 S.W.2d 781 [sic] (1975), *Hudson v. Owens*, Ky., 439 S.W.2d 565 (1969). The mere occurrence of a heart attack while at work alone is insufficient to establish a causal link between the onset of the harmful change and one's work, *Pierce v. Kentucky Galvanizing Co., Inc.*, Ky.App., 606 S.W.2d 165 (1980). Heart attack cases represent a separate class of injury and necessitate careful scrutiny of evidence on a case by case basis. In the present claim, the plaintiff advanced the theory that the stress and strain imposed upon Mr. Roberts as the result of a different type of haul than he had been customarily confronted, greatly attributed to the onset of this individual's heart attack. This is further reinforced with the location of the haul on a mountain side and also that this was the individual's first heart attack. The defendant-employer counters this position with the observation that Mr. Roberts was not engaged in substantial arduous labor. The plaintiff was a truck driver who was not required to load his truck nor perform any maintenance duty whatsoever. Rather, he merely drove the truck from the loading site to the dumping site which was a short distance. This required him to shift gears, steer the truck and to avoid holes in the road and the dumping site. As to the advancement of substantial stress imposed as the result of the particular job, it is felt that there was no substantial increase in the stress that Mr. Roberts would experience on this job site than he would from other trucking duties. Obviously there are very stressful relationships in the operation of any large motor vehicle which the claimant has faced throughout his career as a truck driver. Finally, it is noted that the claimant's condition results from the blockage of the left anterior descending artery. Based upon the testimony of Dr. Myers and the testimony of Dr. Elion, the claimant's physical activity on March 22, 1988, did not cause the internal breakdown. Mr. Roberts' work was coincidental with his heart attack.

■ "Roberts' first argument is that there is "no evidence in the record upon which the Judge could find against the petitioner." The ALJ, however, specifical-

ly noted that he relied upon the testimony of Drs. Elion and Myers. While Dr. Elion initially reported that the work was a factor, he later explained that this was a mere possibility and was not the most likely scenario. Dr. Myers diagnosed arteriosclerotic heart disease, but specifically reported that this was not related to his work activity. It is well established that the ALJ, as fact-finder, has the authority to believe part of the evidence and disbelieve other parts, even if it came from the witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, Ky., 560 S.W.2d 15 (1977). As long as the ALJ's determination is suggested by any evidence of substance, it cannot be said that the record compels a different result. *Special Fund v. Francis*, Ky., 708 S.W.2d 641 (1986). Here, the ALJ was within his authority in basing this determination of the testimony of Drs. Elion and Myers, since the ALJ, and not the appellate Board, has the authority to determine the quality, character and substance of the evidence. *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418 (1985).

"The next argument is that the ALJ used the wrong standard of review. In heart attack cases, the medical evidence should be considered, not as determinative, but as part of the totality of the circumstances before an opinion should be reached as to causation. *Moore v. Square D Company*, Ky., 518 S.W.2d 781 (1974) and *Hudson v. Owens, supra.* As the ALJ pointed out, however, the fact that the attack occurred at work does not, in and of itself, require a finding of work relatedness. *Pierce v. Kentucky Galvanizing Company, supra.* Here, in addition to the evidence from Drs. Elion and Myers, the ALJ noted Roberts' arguments concerning the strain and stress of the job as well as Roberts' own description of his job activities and the fact that he had performed such jobs for the entirety of his work life. Therefore, it cannot be said that the ALJ did not consider all the evidence before reaching a decision.

"Finally, Roberts contends that "[t]he defendant/employer made an im- proper contact on an ex parte basis with petitioner's treating physician, and as such any testimony from that physician thereafter should be stricken." While alleging that "[i]t is quite clear that this is the law," Roberts has not directed the Board to any Kentucky authority to support this. His reliance on *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986), *appeal denied*, 113 Ill.2d 584, 106 Ill.Dec. 55, 505 N.E.2d 361 (1987), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987) and *Wenninger v. Muesing*, 307 Minn. 405, 240 N.W.2d 333 (1976) is totally misplaced as both Illinois and Minnesota have statutes forbidding such contacts. In addition, there was a specific court order against such contact in the Illinois case. Kentucky has no such statute and we find nothing in the record to show that Carter Estep's counsel violated any order issued by the ALJ.

"Additionally, as noted above, this issue was neither listed as a contested issue on the prehearing order nor raised at the hearing itself. 803 KAR 25:011 § 8(6) limits discussion to those contested issues which are contained on the prehearing order. Since this issue was not properly raised before the ALJ, the Board cannot address it on appeal.

"Carter Estep has requested sanctions pursuant to KRS 342.310. While we find no merit in this appeal, the matter of sanctions should also be dismissed. It is readily conceivable that Roberts was acting in good faith in contesting this decision of the Administrative Law Judge, and therefore sanctions should not lie.

"Accordingly, the Opinion and Order of the Administrative Law Judge is therefore AFFIRMED, and the appeal is DISMISSED.

"GREATHOUSE, Member, CONCURRING."

Regarding appellee Carter Estep's continued request for sanctions pursuant to KRS 342.310, we would point out that as this appeal has progressed from the Board level, it has become far less conceivable

that claimant Roberts was acting in good faith in contesting the decision of the Court of Appeals affirming the opinion of the Board. This appeal comes dangerously close to contravening KRS 342.310 for lacking reasonable grounds. *See also, Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685 (1992). Viewing the merits of this appeal as marginal at best, we refrain from imposing any sanction but remind all litigants of our commitment to fulfilling the intent of the Act to afford an expeditious outcome of workers' compensation claims.

All concur.