RENDERED: JUNE 11, 2015
TO-BE-PUBLISHED

# Supreme Court of Kentucky

2014-SC-000390-MR

DATE 7-2-15 *Smith Group, DC*

STACEY CALDWELL                 APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.            CASE NO. 2014-CA-000456-OA
JEFFERSON CIRCUIT COURT NO. 09-CI-007369

HONORABLE A. C. McKAY CHAUVIN,
JUDGE, JEFFERSON CIRCUIT COURT          APPELLEE

AND

DR. FRANK P. CASTRO,
D/B/A PALO ALTO SPINE, LLC          REAL PARTY IN INTEREST

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

## <u>AFFIRMING</u>

Litigants have historically been permitted to conduct ex parte[1] interviews

with fact witnesses. These interviews serve various purposes but are mainly

---

[1] The law often attaches a negative connotation to communications labeled as ex parte. *See* BLACK'S LAW DICTIONARY 597 (7th ed. 1999) ("*ex parte communication*: A generally prohibited communication between counsel and the court when opposing counsel is not present."). Our use of the phrase ex parte throughout this opinion is devoid of those implications contrived from clandestine—and impermissible—communications between an attorney and a judge or a party known to be represented by counsel. Instead, we use this phrase in a manner that is true to the basic definition of the Latin phrase, "from or on behalf of one side of the lawsuit," to refer to a meeting between counsel and a fact witness without prior notification to opposing counsel and the court. BRYAN A. GARNER, GARNER'S DICTIONARY OF MODERN LEGAL USAGE 343 (3d ed. 2011). Other jurisdictions, as well as the parties and amici presently before us, have routinely referred to these interactions as ex parte without invoking the level of impropriety ordinarily associated with ex parte communications. We do the same.

directed at investigating the facts of the case and curtailing litigation costs by allowing litigants to gauge the usefulness of a witness's potential testimony by interviewing the witness before paying for a discovery deposition.

Whether this time-honored method of informal discovery extends to the plaintiff's treating physicians and what role the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) plays in regulating these interviews has been an issue across the country for some time. And the issue has come before many of Kentucky's circuit courts and the federal courts in both the Western and Eastern Districts of Kentucky. Today we decide conclusively whether litigants in Kentucky may, and under what conditions, engage in ex parte interviews with treating physicians.

In an original action before the Court of Appeals, Stacey Caldwell, the plaintiff in the underlying medical-malpractice action, sought a writ of prohibition preventing the trial court from enforcing its order permitting counsel for Dr. Frank Castro,[2] the defendant in the underlying action, to contact Caldwell's treating physicians ex parte. Importantly, no provision in the trial court's order compelled any physician to have contact with Castro's counsel or disclose any information, nor did it authorize disclosure of protected health information; whether or not to disclose any information was left to the treating physician's discretion. Before the Court of Appeals, Caldwell argued that because she was entitled to confidentiality in her communications with

---

[2] Dr. Castro practices for Palo Alto Spine, LLC.

2

her healthcare providers, the trial court's order permitting ex parte contact with those providers was in error.

The Court of Appeals declined to issue a writ because it found Caldwell did not have a right to confidentiality in her communications with her treating physicians. As a result, the Court of Appeals concluded the trial court's order was not erroneous.

Based on our review of Kentucky and federal law, we conclude that no law inhibits litigants from seeking ex parte interviews with the opposing party's treating physicians. But the disclosure of medical information during those ex parte meetings is controlled by HIPAA. For disclosure to be permitted, the party must first obtain a court order authorizing disclosure in a voluntary ex parte interview. Upon review of the instant order, it is clear the trial court declined to authorize ex parte disclosure of Caldwell's health information thus failing to satisfy HIPAA. But because the trial court is explicit in its refusal to authorize ex parte disclosures, we find it unnecessary to issue an extraordinary writ.

## I. FACTUAL AND PROCEDURAL HISTORY.

The underlying litigation stems from a discectomy Castro performed on Caldwell. Caldwell had a long history of spinal problems predating the procedure, but she alleges the surgery was unnecessary and negligently performed. Caldwell claims she suffered painful nerve damage and restricted mobility because of this surgery.

3

During the course of discovery and after obtaining Caldwell's medical records, Castro moved the trial court to enter a qualified protective order permitting him to make ex parte contacts with Caldwell's healthcare providers. Following a hearing, the trial court concluded there is no bar prohibiting Castro's counsel from contacting ex parte Caldwell's healthcare providers because they are ultimately fact witnesses and the information they possess is not subject to an evidentiary privilege. The trial court's order[3] limited the scope of Castro's counsel's permissible ex parte contacts to those physicians who treated Caldwell "for the injuries that are the subject matter of this litigation" but expressly declined to authorize disclosure of Caldwell's health information. The court's order also explicitly stated it was neither requiring any physician to speak with Castro nor compelling disclosure of any information to Castro, noting the "treating physicians are free to accept or decline counsel's request as they see fit."

Caldwell filed a petition for a writ of prohibition and a motion for intermediate relief[4] with the Court of Appeals. In her petition, Caldwell argued, as she does now, she was entitled to a writ because the trial court's order violated the physician-patient privilege, her right to confidentiality in her communications with her doctors, and the order was not authorized by federal

---

[3] The court's order, although entitled "Qualified Protective Order," is nothing of the sort. The order does not mandate any disclosure and does not require any protective measures to ensure the confidentiality of information discovered pursuant to the order. Although it is a qualified protective order in name, the trial court's order also fails to satisfy HIPAA's requirements for qualified protective orders as outlined in 45 C.F.R. 164.512(e)(1)(v).

[4] *See* Kentucky Rules of Civil Procedure (CR) 76.36(4).

4

law. The Court of Appeals denied her motion for intermediate relief without discussion. It also omitted analysis of the writ prerequisites and proceeded directly to the merits of her allegation of error.

Upon reaching the merits, the Court of Appeals declined to issue a writ and presented two main reasons for so holding. First, it concluded no Kentucky law prohibits the trial court from authorizing ex parte correspondence with nonexpert treating physicians. And second, the Court of Appeals reasoned the trial court's order did not violate any right Caldwell may have to privacy of her medical information because the order does not compel any disclosure. The court declined to address the impact of HIPAA's privacy regulations on Castro's ability to communicate ex parte with Caldwell's physicians, deciding "the order of the trial court relied solely upon Kentucky authority."

Caldwell appeals that denial to this Court as a matter of right.[5]

## II. ANALYSIS.

The issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence.[6] We are, therefore, "cautious and conservative both in entertaining petitions for and in granting such relief."[7]

---

[5] CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); see also Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court . . . .").

[6] Ridgeway Nursing & Rehab. Facility, LLC v. Lane, 415 S.W.3d 635, 639 (Ky. 2013).

[7] Bender v. Eaton, 343 S.W.2d 799, 800 (Ky. 1961).

5

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.[8]

Caldwell makes no proper argument that the trial court was without jurisdiction to enter the challenged discovery order.[9] She seeks the second class of writ. And when seeking a writ of the second class, a petitioner must first show she has no adequate remedy by appeal or otherwise. If this requirement can be met, the petitioner must then show she will suffer great injustice or irreparable harm absent the issuance of a writ. This has consistently been defined as injury of a "ruinous nature."[10]

The latter requirement is not absolute, however. In what has come to be known as the "certain-special-cases exception," our precedent allows waiver of the great injustice and irreparable harm element in cases where the instant harm may not rise to the level of irreparable but a "substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of

---

[8] *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004).

[9] Caldwell made a passing allegation that the trial court was acting outside its jurisdiction in entering the allegedly erroneous discovery order. This argument is presented for the first time in a footnote in Caldwell's reply brief. Aside from the absurdity of arguing that a trial court lacks jurisdiction to enter a discovery order in a pending civil case, Kentucky courts have declined to entertain arguments so introduced. *See Smith v. Commonwealth*, 366 S.W.3d 399, 401 (Ky. 2012) (quoting *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky.App. 1979) ("[T]he reply brief is not a device for raising new issues . . . .")). Because this issue is not properly before us, we make no further mention of it.

[10] *Bender*, 343 S.W.2d at 801.

the error is necessary and appropriate in the interest of orderly judicial administration."[11]

Proof of the elements described above is a condition precedent to contemplation of the merits underlying a writ petition. Strict adherence to these prerequisites "is a practical and convenient formula for determining, *prior to deciding the issue of alleged error*, if petitioner may avail himself of this remedy."[12] These strictures evince a reluctance to reach the merits of alleged errors in writ proceedings. Indeed, the test that must be satisfied before the Court may analyze the alleged error was designed expressly to limit "the number of writ cases that proceed to the merits of the controversy"[13] because writ proceedings "necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants."[14] It bears repeating that the issuance of a writ is inherently discretionary. Even if the requirements are met and error found, the grant of a writ remains within the sole discretion of the Court.[15]

Because of the discretion inherent in granting a writ, we review the decision of the Court of Appeals for an abuse of discretion. When questions of law or findings of fact made by the Court of Appeals en route to their ultimate decision are raised, however, we review de novo and for clear error,

---

[11] *Id.*

[12] *Id.*

[13] *Cox v. Braden*, 266 S.W.3d 792, 796 (Ky. 2008).

[14] *Interactive Media Entm't & Gaming Ass'n v. Wingate*, 320 S.W.3d 692, 695 (Ky. 2010) (internal quotation marks omitted).

[15] *Edwards v. Hickman*, 237 S.W.3d 183, 189 (Ky. 2007).

respectively. The Court of Appeals in the present case has omitted analysis of the writ prerequisites in its opinion denying Caldwell's petition for a writ, opting instead to proceed directly to the merits.[16] So we review the availability of the writ remedy de novo.

Caldwell's argument in favor of her entitlement to an extraordinary writ is grounded in state-law principles. She claims the trial court's order permitting Castro's counsel to communicate ex parte with her treating physicians was error because: communications with treating physicians are, or should be, treated as privileged; the American Medical Association's Code of Medical Ethics carries the force of law in prohibiting nonconsented disclosure of confidential information; Kentucky case law prohibits trial courts from authorizing defendant's counsel to communicate with a plaintiff's treating physicians ex parte; and the trial court's order is "confusing and misleading."

Caldwell also argues, at least initially, that HIPAA does not create an entitlement to ex parte contacts for defendants. It is not until the last page of her reply brief that Caldwell makes a one-paragraph argument that HIPAA prohibits the ex parte meetings she seeks a writ to prevent. The amicus on her behalf, the Kentucky Justice Association, took up the HIPAA argument and presented us with a comprehensive argument explaining why, in its view, the trial court's order violates HIPAA. Castro, of course, refutes Caldwell's

---

[16] It is worth noting that this practice has support in our writ jurisprudence. Our precedent authorizes proceeding directly to the merits of a dispute when they are uncomplicated and doing so would promote the end of "judicial economy in limiting the breadth of analysis appellate courts undertake when considering writs." *So. Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 927 n.20 (Ky. 2013). The Court of Appeals used that approach, but we choose the more traditional analytical approach.

8

allegations of error; and although he presents a capable argument regarding HIPAA's impact on ex parte communications with nonparty treating physicians, Kentucky Defense Counsel, Inc., supplied an amicus brief buttressing Castro's cause regarding HIPAA.

We have often held discovery disputes satisfy the no-adequate-remedy-by-appeal requirement. Cases so holding often focus on the inability of information disclosed under an erroneous discovery order to be recalled.[17] In those cases, "[t]he injury suffered . . . will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case."[18]

This case is no different. Although Caldwell's main objection is with the form of discovery permitted by the trial court's order, the gravamen of her complaint is that through ex parte discovery—which, by definition, takes place beyond the watchful eye of opposing counsel or the court—confidential or otherwise undiscoverable information, or information protected by federal law, may be disclosed without Caldwell's consent and to her detriment. If that were to happen—and we must presume it will happen when assessing the

---

[17] *See, e.g., Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004) ("[T]here will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery."); *Bender*, 343 S.W.2d at 802.

[18] *Bender*, 343 S.W.2d at 802.

availability of the writ remedy[19]—Caldwell would be left without an avenue of appellate recourse to rectify her grievance.[20]

We also find this issue to satisfy the certain-special-cases exception because its resolution is necessary to ensure the orderly administration of justice in the Commonwealth. This exception has been reserved for "first-impression questions[] bearing importantly on the public administration of the law or on a party's fundamental rights."[21] We find this to be a case of the former and conclude it is particularly suited to application of this exception because of the unique procedural posture in which this issue typically will arise.

This case presents our appellate courts with their first opportunity to address this issue,[22] even though the bulk of HIPAA's privacy regulations were

---

[19] *See Commonwealth, Cabinet for Health and Family Servs. v. Chauvin*, 316 S.W.3d 279, 283 (Ky. 2010) ("In applying this threshold test, the petitioner's allegations are assumed to be true.").

[20] *See Bender*, 343 S.W.2d at 802 ("Once the information is furnished it cannot be recalled."); *Young v. Carran*, 289 S.W.3d 586, 588 (Ky.App. 2008) ("This court has recently held that HIPAA does not create a state-based private cause of action for violations of its provisions. We also note that federal courts have uniformly held that HIPAA does not create a private cause of action even at the federal level.") (citations omitted).

We except from this conclusion Caldwell's argument citing the "confusing and misleading" nature of the challenged order. Caldwell *did* have an adequate remedy available to rectify this issue. As the Court of Appeals recognized, "a motion for clarification in the trial court was an available and adequate remedy that precludes extraordinary relief." We agree with the Court of Appeals and conclude that a writ is not available to Caldwell on those grounds.

[21] *Inverultra, S.A. v. Wilson*, 449 S.W.3d 339, 349 (Ky. 2014).

[22] A similar claim was raised before, but the Court of Appeals concluded that the plaintiff's allegation "that [her treating physician's] ex parte conversations with [the defendant] were violations of both HIPAA and the Kentucky Rules of Medical Ethics" was not timely raised. *See Miller v. Jewish Hosp. Healthcare Servs., Inc.*, 2004-CA-

10

promulgated nearly fifteen years ago.[23] Our inability to address this issue

before today notwithstanding, it has been percolating through state courts,[24]

federal district courts,[25] and academic circles[26] for a decade. And the issue has

arisen in the trial courts of the Commonwealth. The parties have provided

citation to Kentucky courts that have struggled to address this exact issue in

discovery orders.

Discovery disputes, as a general matter, come before this Court nearly

always via writ petitions. The very nature of informal discovery is likely to

increase this trend because restrictions on ex parte communications are even

less likely to be challenged on appeal once final judgment is reached. It stands

to reason that the only manner in which this issue may reach this Court is

through a writ petition. We find it necessary, therefore, to reach the merits of

this issue to ensure that the decisions of our trial courts concerning ex parte

contacts with treating physicians comport with Kentucky and federal law;[27]

---

001832-MR, 2005 WL 2469688 (Ky.App. Oct. 7, 2005). This Court denied
discretionary review.

[23] See Standards for Privacy of Individually Identifiable Health Information,
65 Fed.Reg. 82,462-01 (Dec. 28, 2000) (to be codified at 45 C.F.R. pts. 160 & 164).

[24] See, e.g., State ex rel. Proctor v. Messina, 320 S.W.3d 145 (Mo. 2010)
(en banc); Arons v. Jutkowitz, 880 N.E.2d 831 (N.Y. 2007).

[25] See, e.g., Bayne v. Provost, 359 F.Supp.2d 234 (N.D.N.Y 2005); Nat'l Abortion
Fed'n v. Ashcroft, 2004 WL 292079 (N.D. Ill. Feb 6, 2004).

[26] See, e.g., Joseph Regalia & V. Andrew Cass, Navigating the Law of Defense
Counsel Ex parte Interviews of Treating Physicians, 31 J. CONTEMP. HEALTH L. & POL'Y
35 (2015); Scott Aripoli, Comment, Hungry Hungry HIPAA: Has The Regulation Bitten
Off More Than it Can Chew By Prohibiting Ex parte Communication With Treating
Physicians?, 75 UMKC L.Rev. 499, 500 (2006).

[27] To be sure, this is not to imply that writ petitions will satisfy the certain-
special-cases exception simply because they concern a discovery matter. To the
contrary, most discovery disputes concern the application of settled principles of law

11

otherwise, those decisions may continue to evade appellate review. Caldwell's instant petition presents a claim for which a writ is an appropriate remedy at this Court's discretion pending an analysis of the merits.[28]

Turning to the merits of Caldwell's writ petition, we will first address HIPAA's impact because, as we discuss below, the HIPAA analysis necessarily subsumes the state-law arguments championed by Caldwell.

## A. HIPAA Does not Prohibit Ex Parte Interviews with Treating Physicians, but it Does Regulate the Protected Health Information to be Disclosed in Ex Parte Interviews.

Congress enacted HIPAA with the primary purpose of making health insurance more "portable" to prevent the denial of insurance coverage for preexisting conditions when employees change jobs and, in so doing, change health-insurance providers.[29] As part of HIPAA's expansive reform, Congress charged the Secretary of the United States Department of Health and Human Services (HHS) with promulgating regulations "with respect to the privacy of individually identifiable health information" if Congress had not done so three years after HIPAA's enactment.[30] When Congress failed to act, HHS adopted,

---

at the discretion of capable trial judges. This case is distinguished from run-of-the-mill discovery writs because if we decline to reach the merits of this issue, trial courts will be left with no precedential guidance going forward.

[28] See Commonwealth v. Peters, 353 S.W.3d 592, 596 (Ky. 2011) (concluding the special-cases exception applied where "the issue in the present case has far-reaching implications regarding pretrial procedure in the Commonwealth").

[29] See Arons, 880 N.E.2d at 839-40 ("Congress enacted HIPAA principally to increase the portability and continuity of health insurance and to simplify administrative procedures so as to reduce health care costs.").

[30] Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. No. 104-191, § 264(c)(1), 110 Stat. 1936, 2033-34.

12

after notice and public comment, privacy regulations ensuring patients' privacy as medical records began their move to storage in a digital format.[31]

The cornerstone of HIPAA's privacy rule presents a broad prohibition on the disclosure of medical information, providing that "[a] covered entity or business associate may not use or disclose protected health information, except as permitted or required by this subpart."[32] A *covered entity* is defined to include health plans; health care clearinghouses; and health care providers, such as physicians and hospitals.[33] *Protected health information* includes, with exceptions irrelevant here, "individually identifiable health information" transmitted or maintained in whatever form or medium.[34] *Health information* includes information "whether oral or recorded in any form or medium" that pertains to the physical health of an individual.[35]

HIPAA provides for *mandatory* disclosure of protected health information by a covered entity under only two circumstances: (1) upon a request by an individual for her own health information or (2) when requested by the Secretary of HHS to investigate HIPAA compliance.[36] *Permissible* uses and disclosures of protected health information are more numerous and reside in

---

[31] *See* 65 Fed.Reg. 82,462-01 (codified at 45 C.F.R. pts. 160 & 164).

[32] 45 C.F.R. § 164.502(a).

[33] 45 C.F.R. § 160.103.

[34] *Id.*

[35] *Id.*

[36] 45 C.F.R. § 164.502(a)(2).

13

45 C.F.R. 164.502(a)(1).[37] Among the permissible disclosures authorized by HIPAA, is the "litigation exception," which permits disclosure of protected health information "in the course of any judicial or administrative proceeding" either "[i]n response to an order of a court of administrative tribunal" or "[i]n response to a subpoena, discovery request, or other lawful process," so long as additional safeguards are met.[38]

Noticeably absent from the sea of HIPAA privacy regulations is any mention of ex parte communications between counsel and a covered entity.[39] In fact, the privacy rule does not purport explicitly to regulate the permissibility of ex parte communications or interviews as an informal discovery tool.[40] But the absence of express reference to ex parte interviews does not render HIPAA inapplicable to regulate such contacts. Because HIPAA, by its terms, applies to the oral disclosure of health information, it has routinely been held that the

---

[37] See 65 Fed.Reg. 82,462, 82,657 ("We note that nothing in the [privacy] rule requires covered entities to act on authorizations that they receive, even if those authorizations are valid. A covered entity presented with an authorization is permitted to make the disclosure authorized, but is not required to do so.").

[38] 45 C.F.R. § 164.512(e)(1)(i)-(ii).

[39] See Bayne, 359 F.Supp.2d at 240 ("Absent within the four corners of the relevant rules and regulations and the enabling statute is any mention of the ex parte interview of a health provider, such as whether to prescribe or proscribe such actions . . . .").

[40] See Smith v. Am. Home Prods. Corp. Wyeth Ayerst Pharm., 855 A.2d 608, 622 (N.J Super. 2003) ("Nowhere in HIPAA does the issue of ex parte interviews with treating physicians, as an informal discovery device, come into view. The court is aware of no intent by Congress to displace any specific state court rule, statue or case law . . . on ex parte interviews."); Joseph Regalia & V. Andrew Cass, Navigating the Law of Defense Counsel Ex parte Interviews of Treating Physicians, 31 J. CONTEMP. HEALTH L. & POL'Y at 48. ("[N]either the Act, nor its legislative history, expressly prohibits defense counsel ex parte interviews.").

14

disclosure of protected health information in ex parte interviews falls within the ambit of HIPAA.[41]

The divergence of judicial opinion focuses on what impact HIPAA and its litigation exception have on the continued viability of ex parte contacts with treating physicians.[42] Some courts have concluded, and Caldwell and her amicus have argued, that the judicial exception is wholly inapplicable to informal ex parte discovery because its covert nature renders it outside "the course of any judicial or administrative proceeding," which is a prerequisite for disclosure under that section. The contrary analysis, promoted by Castro and his amicus, reasons that HIPAA does not prohibit ex parte interviews with treating physicians, it "merely superimposes procedural prerequisites" to authorize disclosure of protected health information.

The leading case espousing the former position is *State ex rel. Proctor v. Messina*, decided by the Supreme Court of Missouri.[43] In that case, the court narrowly defined the litigation exception's leading language: "in the course of a judicial . . . proceeding."[44] As a result, the court concluded that disclosure

---

[41] *See, e.g., Messina*, 320 S.W.3d at 150 ("This federal regulation's use of the term *oral* communication clearly includes *ex parte* 'oral' communications with a physician . . . .").

[42] Scott Aripoli, Comment, *Hungry Hungry HIPAA: Has The Regulation Bitten Off More Than it Can Chew By Prohibiting Ex parte Communication With Treating Physicians?*, 75 UMKC L.Rev. at 500 ("Whether HIPAA truly does preclude defense attorneys from conducting ex parte interviews with treating physicians has yet to be concretely settled in jurisdictions that have traditionally allowed ex parte communications. . . . Unfortunately, no two jurisdictions seem to have found a uniform line of reasoning with regard to answering this question.").

[43] 320 S.W.3d 145 (2010) (en banc).

[44] *Id.* at 156.

under that exception "must be under the supervisory authority of the court either through discovery or through other formal court procedures."[45] Because the Missouri Rules of Civil Procedure do not provide a mechanism for courts to oversee ex parte communications, the court held 45 C.F.R. § 164.512(e), which permits disclosures in the course of judicial proceedings, does not apply to a meeting for ex parte communications."[46]

The opposing viewpoint may be found in the Court of Appeals of New York's decision in *Arons v. Jutkowitz*.[47] The court in *Arons* concluded that "the Privacy Rule does not prevent this informal discovery from going forward, it merely superimposes procedural prerequisites."[48] Those procedural prerequisites, the court explained, include satisfying one of the two prongs of the litigation exception in order to permit disclosure of protected health information by the covered entity.[49] This reasoning has been adopted by the Supreme Court of Michigan, holding that ex parte interviews were permitted under HIPAA and disclosure of protected health information permitted so long as the second prong of the litigation exception was satisfied by provision of "satisfactory assurance" that efforts have been made to obtain a qualified protective order.[50]

---

[45] *Id.*

[46] *Id.* at 157.

[47] 880 N.E.2d 831 (N.Y. 2007).

[48] *Id.* at 842.

[49] *Id.*

[50] *Holman v. Rasak*, 785 N.W.2d 98, 105-08 (Mich. 2010); 45 C.F.R. § 164.512(1)(e)(ii)(B) ("A covered entity may disclose protected health information in

16

We find more persuasive the New York court's position. We do not define "in the course of any judicial . . . proceeding" as narrowly as the *Messina* court in light of the Secretary of HHS's commentary in the Federal Register pertaining to 45 C.F.R. § 164.512, which explains the Privacy Rule was "not intended to disrupt current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected information."[51] Viewing HIPAA's privacy regulations as "merely superimpos[ing] procedural prerequisites" over informal ex parte discovery is the most appropriate analytical approach. If a party satisfies the superimposed procedural prerequisites by fulfilling the litigation exception's requirement, the resulting ex parte contact has been drawn well within "the course of [the] judicial . . . proceeding" as required by HIPAA.

Before moving on, it is worth taking a close look into the procedural prerequisites imposed by HIPAA. For an ex parte interview with a treating physician to comply with HIPAA, it must fall within the litigation exception. The text of this provision reads:

> (1)   Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

---

the course of any judicial . . . proceeding: In response to a subpoena, discovery request, or other lawful process that is not accompanied by an order of a court or administrative tribunal, if: The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order . . . .").

[51] 65 Fed.Reg. 82,462, 82,530.

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, *or other lawful process*, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.[52]

Where our analysis differs from that of the courts cited above comes in our definition of the emphasized language "or other lawful process." Both *Arons* and *Holman* defined this phrase broadly enough to encompass an ex parte interview and held that compliance with this second prong—providing "satisfactory assurance" that the subject of the protected health information was notified of the request or that a qualified protective order had been sought—was adequate to meet HIPAA's superimposed procedural prerequisites. We do not define *lawful process* so broadly.

---

[52] 45 C.F.R. § 164.512(e)(1)(i)-(ii) (emphasis added).

We typically define words according to their ordinary meanings when interpreting statutes, but that general rule yields when a word or phrase has a technical meaning within the law.[53] And the latter is the case here. Black's Law Dictionary defines *process* as "[t]he proceedings in any action or prosecution," or a "summons or writ, esp. to appear or respond in court."[54] This entry concludes by noting the *process* as defined above is also termed *legal process.*

We find the second definition of *process* to be applicable here because its definition must be informed by the items that precede it. Defining *lawful process* as "a summons or writ, esp. to appear or respond in court" is in keeping with the general tenor of that section that also includes subpoenas and discovery requests. The common-sense definition of *lawful process*—any action that is not in violation of law—is too far-reaching when considering the balance of the provision. Applying this definition of *lawful process*, we are constrained to conclude that ex parte interviews do not fall within this strict definition of *lawful process.* Even though we have concluded that ex parte interviews are conducted within the course of a judicial proceeding, they are still decidedly informal and entirely voluntary, unbefitting of the designation of lawful process ascribed to formal discovery tools. Therefore, we hold that protected health

---

[53] *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 535 (Ky. 2011) (quoting *Baker v. White*, 65 S.W.2d 1022, 1024 (Ky. 1933) ("[I]n the interpretation and construction of statutes, words and phrases employed by the lawmaking body must be given their plain and ordinary meaning according to popular usage, unless they have acquired a technical sense, in which event, they will be given such accepted technical meaning.").

[54] BLACK'S LAW DICTIONARY 1222 (7th ed.)

19

information may only be disclosed under HIPAA's litigation exception if the exception's first prong is satisfied by order of the trial court.

This interpretation of the litigation exception is also consistent with our reliance on trial courts as gatekeepers of discovery[55]—even informal discovery, when appropriate. Under our construction of the litigation exception, for the ex parte disclosure of protected health information to comport with HIPAA, a party must first seek authorization from the trial court. If we were to adopt the application of the litigation exception as contemplated in *Arons*, disclosure of protected health information would be permitted under HIPAA, yet, still within the discretion of treating physicians upon counsel's provision of "satisfactory assurance" that: "reasonable efforts" have been made to *notify* the subject of the protected health information of the request; or a qualifying protective order has been *sought*.[56] Notice need not have been achieved nor a qualified protective order obtained to satisfy the second prong of the litigation exception as construed by *Arons*—"sufficient assurance" of "reasonable efforts" to provide notice or merely seeking a qualified protective order would suffice. Indeed, Castro argues he has met this low standard by obtaining the order at issue, even though by its own terms the order withholds authorization for the disclosure of protected health information and does not meet the required

---

[55] *Primm v. Isaac*, 127 S.W.3d 630, 634 (Ky. 2004) ("Generally, control of discovery is a matter of judicial discretion.").

[56] 45 C.F.R. § 165.512(e)(1)(ii)(A)-(B); *Arons*, 880 N.E.2d at 842 ("As a practical matter, this means that the attorney who wishes to contact an adverse party's treating physician must first obtain a valid HIPAA authorization or a court of administrative order; or must issue a subpoena, discovery request or other lawful process with satisfactory assurances relating to either notification or a qualified protective order.").

20

protective standards outlined in 45 C.F.R. § 165.512(e)(1)(v). To interpret the litigation exception as allowing disclosure of protected health information under the second prong in contravention of an order declining to authorize disclosure under the first prong undercuts the discretion vested in trial courts.

We conclude HIPAA does not prohibit ex parte interviews, but its strictures do regulate disclosure of protected health information during their course. We further hold HIPAA's procedural prerequisites to disclosure of protected health information may only be satisfied by order of a court or administrative tribunal[57] because ex parte interviews do not come within the meaning of *lawful process* as used in 45 C.F.R. § 165.512(e)(1)(ii).

But our analysis does not end here. HIPAA's privacy rule contains a preemption clause whereby any "contrary" provision of state law is preempted absent the application of an enumerated exception.[58] State law is "contrary" to HIPAA "only if it would be impossible for a covered entity to comply with both the state requirement and the Rule, or the former is an obstacle to accomplishing the full purposes and objectives of HIPAA's 'administrative simplification' provisions."[59] But if a "contrary" law requires a *more stringent* standard of privacy, HIPAA's preemption provisions are inapplicable and state law controls. So we must undertake an analysis of Kentucky law to determine what law controls the instant dispute.

---

[57] *See* 45 C.F.R. § 164.512(e)(1)(i).

[58] 45 C.F.R. § 160.203 (pertaining to the preemptive effect of HIPAA's regulations).

[59] *Arons*, 880 N.E.2d at 841-42 (citing 45 C.F.R. § 160.202).

## B. Kentucky Law Places no Restrictions on Voluntary Ex Parte Interviews with Nonexpert Treating Physicians.

There is a dearth of Kentucky law dealing with litigants' ability to confer ex parte with nonparty fact witnesses. And the cases that do broach this topic do so upon the allegation that an ex parte contact was rendered impermissible only by way of some express rule.[60] But what we can glean from those cases is that their analysis begins—without fail—with the presumption that ex parte contacts with willing fact witnesses are permissible absent express limitation. Although these contacts are not mentioned in our civil rules pertaining to discovery,[61] those rules are not meant to be exhaustive and do not express any intent to foreclose the "time honored"[62] tool of informal discovery that is the ex parte interview.[63] Also, to disallow parties equal access to an effective and inexpensive method of establishing operative facts would conflict with the

---

[60] *See, e.g., Shoney's, Inc. v. Lewis*, 875 S.W.2d 514 (Ky. 1994) (finding ex parte contacts between plaintiff's counsel and defendant's managerial employees to be impermissible only because of the application of Supreme Court Rule (SCR) 3.130-4.2 prohibiting counsel to contact a party represented by counsel unless authorized to do so); *Hilliard v. Commonwealth*, 158 S.W.3d 758 (Ky. 2005) (holding use of subpoena power to compel a witness's appearance for an ex parte interview impermissible as on abuse of subpoena power, not because the ex parte contact itself was impermissible); *see also Radford v. Lovelace*, 212 S.W.3d 72, 82 (Ky. 2006) *overruled on other grounds by Cardine v. Commonwealth*, 283 S.W.3d 641 (Ky. 2009) ("It is important for us to remember that both sides have the right to interview witnesses before trial.") (quotation marks omitted).

[61] *See* CR 26-37.05.

[62] Angela T. Burnette & D'Andrea J. Morning, *HIPAA and Ex parte Interviews— The Beginning of the End?*, J. HEALTH & LIFE SCI. L. 73, 77 (April 2008).

[63] *See Domako v. Rowe*, 475 N.W.2d 30, 36 (Mich. 1991) ("The omission of [ex parte] interviews from the court rules does not mean that they are prohibited, because the rules are not meant to be exhaustive. Their absence from the court rules does indicate that they are not mandated and that the physician cannot be forced to comply, but there is nothing in the court rules precluding an interview if the physician chooses to cooperate.") (citation omitted).

22

purpose our civil rules were meant to serve.[64] So we begin our analysis of Kentucky law as it pertains to ex parte communications with treating physicians by accepting the same premise impliedly accepted in our precedent and by the parties in the present case: voluntary ex parte contacts with fact witnesses are a permissible form of informal discovery absent some limitation found outside our discovery rules.

Caldwell argues such a limitation prohibiting ex parte communications with treating physicians may be derived from multiple sources of Kentucky law. She first alleges the existence of a physician-patient privilege operates to limit the viability of ex parte communications with treating physicians, or, alternatively, that these situations should be treated as if a privilege does exist. Next, she claims that the American Medical Association's Code of Medical Ethics, adopted by the Kentucky State Board of Medical Licensure under its statutory authority, carries the force of law in prohibiting nonconsented disclosure of confidential information. Lastly, she argues that Kentucky case law prohibits defendants from contacting ex parte nonparty treating physicians.

---

[64] *Naive v. Jones*, 353 S.W.2d 365, 367 (Ky. 1961) ("The civil rules prescribe a *practical* pattern for the conduct of litigation and the *effective* administration of justice.") (emphasis added); *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983) ("As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence."); *see also Langdon v. Champion*, 745 P.2d 1371, 1375 n.8 (Alaska 1987) ("[T]o disallow a viable, efficient, cost effective method of ascertaining the truth because of the mere possibility of abuse, smacks too much of throwing out the baby with the bath water.").

## 1. Kentucky Does not Recognize a Physician-Patient Privilege, and We Decline to Act as Though One Does Apply Here.

Caldwell's first argument—that her communications with her physician are privileged and thereby protected from ex parte disclosure under Kentucky law—is disingenuous at best. This argument runs headlong into decades of precedent and ignores the unambiguous text of our rules of evidence pertaining to privilege.[65]

For better or worse, our jurisprudence has been unwavering in its rejection of the patient-physician privilege.[66] We see no reason to engage in a lengthy analysis of this settled issue of law. All privileges, unless otherwise created by statute,[67] are explicitly stated in our rules of evidence. The physician-patient privilege is conspicuously absent from those provisions.[68] And our common law did not recognize such a privilege.[69] We cannot articulate it more clearly than the late Justice Keller did in his concurrence in *Stidham v. Clark*, so we will not attempt to: "[N]o *testimonial privilege* exists in

---

[65] KRE 501-11.

[66] *See, e.g., Stidham v. Clark*, 74 S.W.3d 719, 729 (Ky. 2002) (Keller, J., concurring); *H.H. Waegner & Co. v. Moock*, 197 S.W.2d 254, 256 (Ky. 1946); *Boyd v. Winn*, 150 S.W.2d 648, 650 (Ky. 1941); *Louisville & N.R. Co. v. Crockett's Adm'x*, 24 S.W.2d 580, 583 (Ky. 1930).

[67] *Commonwealth, Cabinet for Health and Family Servs.*, 316 S.W.3d at 284 ("Kentucky evidentiary rules recognize the ability of the legislature to control their contents, presumably including privileges, limited only by section 116 of the Kentucky Constitution.").

[68] *See* KRE 501-11.

[69] *Boyd*, 150 S.W.2d at 450 ("At common law neither the physician nor the patient could claim the privilege of refusing to disclose confidential communications between them in the course of the physician's attendance upon or treatment of the patient in a professional capacity.").

Kentucky for communications made between a patient and physician for the purpose of medical treatment."[70]

Having found no privilege to exist, Caldwell argues, in the alternative, that we should nonetheless treat her communications with her physicians as though they are privileged. We readily accept that the communications between a patient and her physician are sensitive in nature. That said, our court system has operated relatively smoothly since its inception without the privilege Caldwell seeks. We have heretofore not identified a cognizable right to a privilege in medical communications and again decline to do so today.

It is high time litigants abandon this tired argument. Our disinclination to recognize a physician-patient privilege or to apply the faux privilege that Caldwell argues for in the alternative is well documented. Any change that will see a physician-patient privilege recognized in Kentucky will come by way of a change to our rules of evidence or through the legislature's authority to create privileges recognized in *Stidham.*

## 2. The American Medical Association's Code of Medical Ethics Does not Carry the Force of Law to Render Ex Parte Contacts with Physicians Impermissible.

Caldwell next argues that the confidentiality provisions contained in the American Medical Association's Code of Medical Ethics guarantees her right to confidentiality because the Kentucky Board of Medical Licensure adopted the Code of conduct under authority granted by statute and also possesses statutory authority to levy punishment for ethical violations.

---

[70] *Stidham,* 74 S.W.3d at 729 (Keller, J., concurring).

The Kentucky Board of Medical Licensure is granted statutory authority to "promulgate a code of conduct governing the practice of medicine and osteopathy, which shall be based upon generally recognized principles of professional conduct."[71] The Board is also statutorily afforded the concomitant authority to discipline practitioners within its purview for ethical violations.[72]

To satisfy its statutory grant of authority, the Board adopted the AMA Code of Medical Ethics. The provision of the Code relevant to the instant proceedings reads:

> **Confidentiality.** The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree. The patient should feel free to make a full disclosure of information to the physician in order that the physician may most effectively provide needed services. The patient should be able to make this disclosure with the knowledge that the physician will respect the confidential nature of the communication. The physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law.[73]

This provision clearly creates a professional duty that requires healthcare providers to maintain the confidentiality of patient information. But Caldwell overstates the weight of the Code of Medical Ethics. It is true that the Code was promulgated under statutory authority and that violations of the Code are

---

[71] Kentucky Revised Statutes (KRS) 311.565(1)(j).

[72] KRS 311.595(9), (16).

[73] American Medical Association, Council on Ethical and Judicial Affairs, CODE OF MEDICAL ETHICS § 5.05 (1994). Castro and Amicus Curiae Kentucky Defense Counsel, Inc., note that the quoted provision, the one relied on by Caldwell, is an outdated version of this section. This is correct; but the updated version is substantially the same as the one relied upon by Caldwell, and the amendment does not affect out analysis. *See* American Medical Association, Council on Ethical and Judicial Affairs, CODE OF MEDICAL ETHICS § 5.05 (2007).

punished by the Board under statutory authority. But that tangential statutory basis is insufficient to give the Code the force of law and create an all-encompassing right to confidentiality by patients.

Indeed, other ethical codes policing the medical community—even one adopted jointly with the Kentucky Bar Association—have been held to lack the weight of law.[74] "The Code professes to be an ethical guide, not an authority binding the courts."[75] We are not alone in our conclusion that ethical standards levied within the medical community are not binding on courts.[76] Further, counsel's ability to seek an ex parte interview with a physician bound by the Code does not prevent the physician from abiding by his professional duty of confidentiality.

A physician's ethical duty of confidentiality, even if promulgated by a professional body under statutory authority, does not carry the weight of law to limit a litigant's ability to engage in ex parte interviews with physicians. Admittedly, the ethical duty may restrain the physician's willingness to agree to such an interview; but it in no way prohibits a party to litigation from requesting one.

---

[74] *Davenport v. Ephraim McDowell Mem. Hosp.*, 769 S.W.2d 56, 62 (Ky.App. 1988).

[75] *Id.*

[76] *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991) ("The court finds the code of ethics inapplicable to the issues before the court. First, it is not binding law."); *Bryson v. Tillinghast*, 749 P.2d 110, 114 (Okla. 1988) ("[E]thical standards are aspirational in nature and not enforceable by law.").

### 3. *Kentucky Case Law Does not Preclude Litigants from Interviewing Ex Parte Treating Physicians.*

For her last argument, Caldwell cites *Geary v. Schroering*[77] as the preeminent Kentucky case barring ex parte contact with treating physicians. As with her previous state-law arguments, Caldwell again overstates the scope of the law she cites.

In *Geary*, the trial court ordered the personal-injury plaintiff to sign a blank medical authorization allowing the "unrestricted release" of *all* her medical information to the defendant.[78] The Court of Appeals, in a writ proceeding, likened the blank authorization to an ex parte subpoena.[79] Such ex parte subpoenas, the Court of Appeals noted, were forbidden by *Munroe v. Kentucky Bar Association.*[80]

The Court of Appeals went on in *Geary* to extol the virtues of our civil rules by explaining that the medical records sought by the defendant may be discovered through traditional discovery methods, such as formal subpoenas and depositions.[81] The court further stressed the importance of "adversarial safeguards" in the discovery process.[82]

The tenor of the opinion of the Court of Appeals in *Geary* appears to support Caldwell's position, but *Geary*'s analysis diverges from the instant

---

[77] 979 S.W.2d 134 (Ky.App. 1998).

[78] *Id.* at 135.

[79] *Id.* at 136.

[80] 927 S.W.2d 839 (Ky. 1996).

[81] 979 S.W.2d at 136.

[82] *Id.*

issue by contemplating ex parte subpoenas. The case at hand contains no suggestion of the use of ex parte subpoenas, nor can it rightfully be said that a litigant requesting an ex parte interview (or an order permitting the defendant to make such a request) is akin to an ex parte subpoena. By their very nature, informal ex parte interviews are voluntary and, thus, unlike the ex parte use of subpoena power.

Caldwell also takes issue with the trial court and the Court of Appeals citing *Davenport v. Ephraim McDowell Memorial Hospital, Inc.*,[83] as support for the contested order because its holding was premised upon an earlier version of CR 26.02. In *Davenport*, the trial court entered an order permitting a medical-malpractice defendant to request an ex parte meeting with the plaintiff's treating physicians, whom the plaintiff had enlisted as expert witnesses ahead of trial.[84] On appeal, the Court of Appeals concluded the trial court's order was proper, seizing on the language in the then-existing version of CR 26.02(4)(a)(ii) that permitted discovery from expert witnesses "by other means" not enumerated by the civil rules at the discretion of the trial court.[85]

We agree that discussion of *Davenport* is misplaced. The 2004 amendment to CR 26.02 removed the "by other means" language relied upon by the Court of Appeals in holding the trial court's order valid. For this reason,

---

[83] 769 S.W.2d 56 (Ky.App. 1988).

[84] *Id.* at 62.

[85] *Id.*

*Davenport*'s analysis of ex parte communications with expert witnesses is outdated.

But simply because the language that authorized the court's order in *Davenport* has been removed, that does not shift *Davenport* into a tacit abolition of litigants' ability to seek ex parte meetings with the opposing party's physicians. One crucial fact renders *Davenport* inapplicable as an indictment against ex parte contacts with physicians: it concerns physicians retained as expert witnesses. Once retained as experts, CR 26.02(4)—both the version extant in *Davenport* and the iteration currently in force—lists exclusively the manner in which discovery may be obtained.[86] So removal of the language permitting authorization of discovery "by other means" vitiates ex parte interviews with physicians retained as *expert witnesses*, but no such language limits discovery from nonexpert fact witnesses to the formal methods authorized in our Civil Rules.

The case that we find most applicable to the present controversy evaded citation by both the trial court and the Court of Appeals. In *Roberts v. Estep*,[87]—the only case touching on this issue to be decided by this Court—we held that no Kentucky law prohibits a defendant from contacting ex parte the plaintiff's treating physicians.[88] Caldwell attempts to undercut the strength of this holding noting *Roberts* was a workers' compensation case and

---

[86] CR 26.02(4) ("Discovery of *facts known* and opinions held by experts . . . may be obtained *only* as follows . . . .").

[87] 845 S.W.2d 544 (Ky. 1993).

[88] *Id.* at 547.

KRS 342.020 requires waiver of any privilege or confidentiality when filing claim.[89] Caldwell correctly states the law but not its impact on the Court's decision.

*Roberts* does not cite to KRS 342.020 and waiver, compulsory or otherwise. The Court concluded that the defendant's ex parte contact with plaintiff was not rendered impermissible by Kentucky law; it did not conclude that waiver under KRS 342.020(8) authorized the defendant's contact. Had the Court in *Roberts* based its decision on KRS 342.020, we think it would have said so. We will not read into the Court's analysis law that is not patent in its opinion.

In support of her argument against the trial court's order, Caldwell cites statutory and case law from various jurisdictions that prohibit ex parte contacts with treating physicians. While we respect the decisions of our sister states, we nonetheless find their citation unpersuasive. Most notably this is because most of the cited decisions were based on state laws that have no counterpart in Kentucky law—namely the physician-patient privilege and statutes explicitly prohibiting ex parte interviews with treating physicians. That other states found it prudent to adopt a physician-patient privilege or to prohibit by statutory enactment the type of contacts Caldwell currently challenges does little to alter our analysis of Kentucky law.

Upon conclusion of our analysis of Kentucky law, and having addressed each of Caldwell's state-law arguments, we have unearthed no law that limits a

---

[89] KRS 342.020(8).

31

litigant's ability to conduct informal ex parte interviews when the fact witness to be interviewed is a treating physician.[90] They are like any other fact witness in the eyes of the law, and litigants may request voluntary ex parte interviews with nonexpert treating physicians as they please. But Kentucky law does not create an entitlement or right to conduct ex parte interviews with treating physicians.

So Kentucky law cannot be "contrary" to HIPAA as pertaining to ex parte interviews with treating physicians because our law speaks to their viability.[91] We conclude, therefore, that there are no limitations on a defendant's ability to request an ex parte interview with the plaintiff's treating physician. But the physician's ability to disclose the plaintiff's protected health information in an ex parte correspondence is regulated by HIPAA, so disclosure may only be permitted by order of the trial court satisfying 45 C.F.R. § 164.512(e)(1)(i). Like with all other discovery matters, trial courts will remain the gatekeepers and may grant or deny a party's request for a HIPAA-compliant order authorizing ex parte disclosure of protected health information at their discretion.[92]

---

[90] This holding, of course, does not vitiate any professional duties of confidentiality by which physicians may be bound. That those duties do not carry the weight of law does not render them inapplicable or unenforceable in the proper venue.

[91] *See Arons*, 880 N.E.2d at 842 ("[W]here there is a State provision and no comparable or analogous federal provision, or the converse is the case, there is no possibility of preemption because in the absence of anything to compare there cannot be a contrary requirement . . . .") (citing Standards for Privacy of Individually Identifiable Health Information, 64 Fed.Reg. 59,918, 59,995) (Nov. 3, 1999) (quotation marks and alterations omitted).

[92] *See Holman*, 785 N.W.2d at 108-09 ("HIPAA does not require a trial court to grant a motion for a protective order. Therefore, a trial court retains its discretion . . . to issue protective orders and to impose conditions on ex parte interviews.").

**C. The Challenged Order Does not Satisfy HIPAA's Procedural Requirements for the Disclosure of Protected Health Information; but Because the Order Expressly Withholds the Necessary Authorization, a Writ Need not Issue.**

Having determined the law applicable to ex parte interviews with treating physicians, we must now apply that law to the facts at hand. After little more than a cursory review of the challenged trial court order, it becomes manifest that the order does not satisfy the requirements of HIPAA to permit disclosure of protected health information during ex parte interviews.

As addressed above, for disclosure of protected health information to comply with HIPAA, a litigant must first obtain an order authorizing disclosure under 45 C.F.R. § 164.512(e)(1)(i). The instant order does not meet this requirement. In fact, the order acknowledged the need for authorization to permit disclosure of Caldwell's protected health information by her physicians yet declined to authorize disclosure.

The present order has done nothing more than maintain the status quo. It has effectively, and correctly, stated the status of the law currently: defense counsel may seek an ex parte interview with Caldwell's treating physicians, but those physicians may not disclose her protected health information without facing HIPAA sanctions. Indeed, the order states as much—"the treating physician may be unable . . . to speak with counsel absent specific authorization from the [c]ourt permitting him to do so. The [c]ourt is vested with the discretion to provide such authorization. However, the [c]ourt is not inclined to do so in the instant case . . . ."

33

We decline to exercise our discretion to issue a writ in this instance even though any ex parte disclosure of protected health information would surely violate HIPAA. This injury is too speculative to merit such an extraordinary remedy. The order leaves the treating physicians' participation in the ex parte interview and the disclosure of Caldwell's medical information—if they do choose to undertake the interview—to the doctors' discretion. The harm is not immediate enough to require an extraordinary remedy to rectify Caldwell's potential grievance.

Further, the trial court's order does nothing to displace the duty of privacy placed on healthcare providers by HIPAA's privacy regulations. The order does not supplant or alter the duty placed on the physicians possessing Caldwell's protected health information. The order's authorization of the ex parte contacts that Castro sought was also unnecessary based on our analysis; Castro's counsel did not need the court's blessing to seek an ex parte meeting with Caldwell's physicians. The meetings, even without the challenged order, would be, of course, at the discretion of the physician, just as they are under the order.

Given these circumstances, we find the trial court's order to be an accurate statement of the law as it is presently situated and that any potential HIPAA violation is too speculative to merit extraordinary relief in the form of a writ. So we affirm the decision of the Court of Appeals denying Caldwell's petition for a writ.

## III. CONCLUSION.

Based on the foregoing, we conclude nothing in Kentucky law prohibits defendants from seeking ex parte contacts with nonexpert physicians that treated the plaintiff as if they are ordinary fact witnesses. We similarly conclude that HIPAA does not prohibit ex parte interviews with treating physicians as a tool of informal discovery. That HIPAA does not operate to bar these contacts does not relieve treating physicians of the constraints of HIPAA's privacy regulations. HIPAA controls disclosure of protected health information. Trial courts may satisfy HIPAA and authorize disclosure of the plaintiff's protected health information in an ex parte interview by entering an order that complies with 45 C.F.R. § 164.512(e)(1)(i).

We conclude that the order challenged in the instant proceeding did not comply with 45 C.F.R. § 164.512(e)(1)(i), and any disclosures made during ex parte interviews authorized by the order would be in violation of HIPAA. But the order is explicit in its failure to authorize disclosure and its grant of permission allowing Castro's counsel to seek ex parte interviews with Caldwell's physicians was not necessary to authorize this practice. So we find the challenged order to be nothing more than an accurate recitation of the law pertaining to ex parte interviews with the opposing party's treating physicians and does not merit an extraordinary writ of prohibition.

All sitting. All concur. Keller, J., concurs by separate opinion in which Barber and Noble, JJ., join.

35

KELLER, J., CONCURRING: I concur with the result of the majority opinion but write separately because I believe that it is time for Kentucky to adopt a general physician-patient privilege. As the majority states, "We have heretofore not identified a cognizable right to a privilege in medical communications and again decline to do so today." That statement is only partially correct. KRE 507 recognizes that communications between a psychotherapist and patient are privileged. A psychotherapist is defined, in part, as "[a] person licensed by the state of Kentucky, or by the laws of another state, *to practice medicine* . . . while engaged in the diagnosis or treatment of a mental condition." KRE 507(2)(A) (emphasis added). Thus, Kentucky does recognize that medical communications are privileged as long as they occur within the mental health setting. It is understood that sensitive and highly personal information is exchanged between a patient and his or her psychotherapist. Likewise, a patient being treated by a physician for purely physical ailments must reveal sensitive health information in order to facilitate treatment. I can discern no logical reason for the exclusion of medical communications regarding physical health from privilege when communications regarding mental health are privileged.

I note that the other privileges in Article V of the KRE, with the exception of the spousal privilege, prohibit disclosure, not just testimony. Therefore, a general physician-patient privilege should, if similar to the psychotherapist-patient privilege, also prevent disclosure of privileged communications unless a

patient places her medical condition into controversy and the information is obtained in conformity with the rules of procedure.

Barber and Noble, JJ., join.

COUNSEL FOR APPELLANT:

Eric M. Lamb
Lamb & Lamb, PSC

Erwin A. Sherman
Sherman and Osborne


APPELLEE:

Judge Arch Cox McKay Chauvin
Jefferson Circuit Court, Division 8


COUNSEL FOR REAL PARTY IN INTEREST,
DR. FRANK P. CASTRO,
D/B/A PALO ALTO SPINE, LLC:

Donald Kenneth Brown, Jr.
Casey Alan Krill
Mark Edward Hammond
Robert Clayton Veldman
O'Bryan, Brown & Toner, PLLC


COUNSEL FOR AMICUS CURIAE
KENTUCKY JUSTICE ASSOCIATION:

H. Philip Grossman
Grossman & Moore, PLLC

Paul A. Casi, II
Jeffrey Wayne Adamson
Paul A. Casi, II, P.S.C.

Kevin Crosby Burke


COUNSEL FOR AMICUS CURIAE
KENTUCKY DEFENSE COUNSEL:

Bradley A. Case
Dinsmore & Shohl, LLP