v.

**COMMONWEALTH of Kentucky, Appellee**

NO. 2014–CA–002095–ME

Court of Appeals of Kentucky.

RENDERED: OCTOBER 30, 2015; 10:00 A.M.

Brief for Appellant: Angela Slaton, Assistant Public Advocate, Owensboro, Kentucky.

Brief for Appellee: N/A.

BEFORE: CLAYTON, KRAMER, AND STUMBO, JUDGES.

*OPINION*

KRAMER, JUDGE:

A.S.,[1] a female juvenile, appeals the Boyle Circuit Court's order committing her to the custody of the Cabinet for Health and Family Services (Cabinet) as being beyond control.[2] After a careful review of the record, we reverse and remand because A.S. was not notified that she was charged with being beyond control; the circuit court violated A.S.'s right to present a defense and cross-examine witnesses; and the disclosure of A.S.'s medical records was in error.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A petition was filed against A.S. for habitual truancy in April 2014. She was fifteen years old at the time. It was alleged in an affidavit filed with the petition that A.S. had eleven unexcused absences and two tardies that school year. The

---

1. Because A.S. is a juvenile, we will refer to her by her initials rather than by her name.

2. The circuit court did not specify if A.S. was committed to the Cabinet for being "beyond control of parent" or "beyond control of school."

Commonwealth requested a formal hearing.

A week and a half after the petition was filed, a hearing was held. The circuit court entered a Juvenile Status Offender Order, which stated that A.S. had appeared at the hearing with counsel and that A.S. was ordered as follows: (1) to not leave her home without custodial permission; (2) to obey all rules of her home, including a curfew between 8:00 p.m. and 6:00 a.m.; (3) to attend all school sessions on time and have no unexcused absences or behavior problems at school; (4) to not violate the law; (5) to not consume, use or possess any alcoholic beverages, tobacco products or illegal drugs; (6) to submit to random drug testing; and (7) to cooperate fully with the Cabinet's service providers.

Two months later, A.S. signed an admission, in which she admitted to habitual truancy and contempt. Her admission stated, *inter alia*, that she was represented by counsel.

A dependency, neglect or abuse dispositional report was entered in October 2014, in which the court adopted the Cabinet's recommendations. Those recommendations included: (1) A.S.'s father should retain custody of A.S.; (2) A.S. should continue drug screens and attend school; (3) A.S.'s father would be responsible for calling in daily to the Department for Community Based Services for A.S.'s daily drug screens; (4) A.S. should give the school a doctor's excuse for any day she misses; (5) the family would cooperatively work with any health/mental care provider; and (6) the court should consider scheduling a review hearing in about forty-five days.

On December 12, 2014 and December 15, 2014, subpoenas were filed in the circuit court by the Commonwealth, which had been issued to Springview Hospital/Springview Clinic and Danville Pediatrics, respectively, requesting them to appear at the Boyle County Attorney's Office to produce A.S.'s certified medical records. The Assistant Boyle County Attorney was the attorney who requested this information.

A review hearing was held on December 15, 2014. During that hearing, the Commonwealth revealed that it had obtained A.S.'s medical records through issuing subpoenas and that those records revealed that A.S. had twice been treated for Chlamydia, a sexually transmitted disease.[3] A Cabinet worker was the only person called by the Commonwealth to testify during the hearing. The Commonwealth informed the court that it had other witnesses it could call, but the court just asked the Commonwealth for a summary of what those witnesses were going to testify to, and the Commonwealth told the court what the substance of those witnesses' testimony would be. The court did not make the Commonwealth call those witnesses to testify (including at least one witness from the school to testify about A.S.'s unexcused absences). The court asked the Cabinet worker if she knew what the risks of Chlamydia were, and she responded that she did. The child's attorney questioned the Cabinet worker's qualifications for testifying about the dangers of having Chlamydia, and the Cabinet worker responded that she was familiar with the disease because she had been a receptionist in a gynecologist's office for five years. The court then looked up the disease on the Centers for Disease Control's website and read information about the disease into the record, including its risks. At the conclu-

---

3. A.S.'s attorney questioned how the Commonwealth could obtain A.S.'s medical records without her permission under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d–6.

sion of the hearing, the court found that A.S. was "beyond control" and committed her to the Cabinet's care.

A.S. now appeals, contending that: (1) her commitment to the Cabinet must be vacated because she was never charged with being beyond control; (2) the circuit court erred when it did not allow her to present a defense and cross-examine witnesses against her on a beyond control charge; and (3) her medical records were disclosed without her authorization. The Commonwealth did not file an appellate brief in this case.

## II. ANALYSIS

### A. BEYOND CONTROL CHARGE

■ A.S. first alleges that her commitment to the Cabinet must be vacated because she was never charged with being beyond control. Because the Commonwealth did not file an appellee's brief in this case, we may: (1) "accept the appellant's statement of the facts and issues as correct;" (2) "reverse the judgment if appellant's brief reasonably appears to sustain such action; or" (3) "regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." CR [4] 76.12(8)(c). We regard the Commonwealth's failure to file as a confession of error.

■ Nevertheless, in an abundance of caution, we note that the record patently suggests a reversal. Upon review of the record before us, we conclude that A.S. was never charged with beyond control, despite being found by the court to be beyond control and committed to the Cabinet as a result. In *Commonwealth v. B.J.*, 241 S.W.3d 324 (Ky. 2007), the Kentucky Supreme Court noted that status offenses "are neither criminal nor delinquent." *B.J.*, 241 S.W.3d at 327. The Court con-

tinued, noting that proceedings against a child for a status offense may

> "result in severe consequences to that child." *T.D. v. Commonwealth*, 165 S.W.3d 480, 483 (Ky. App. 2005).

In light of these potentially severe consequences to the child, due process must be afforded, despite the non-criminal nature of juvenile proceedings. "[W]here the fault of the child is at issue and penalties, including loss of liberty, may attach, criminal protections provided by the constitution apply." *Id.*

*B.J.*, 241 S.W.3d at 327. Included in these due process protections is the right for the juvenile to be notified of the charges against her before adjudication, so that she can prepare and defend against the charges. *See K.F. v. Commonwealth*, 274 S.W.3d 457, 459 (Ky. App. 2008).

In the present case, because A.S. was not notified that she was charged with beyond control, her due process rights were violated. Therefore, the circuit court's decision must be reversed.

### B. PRESENTING A DEFENSE

■ A.S. next asserts that the circuit court erred when it did not allow her to present a defense and cross-examine witnesses against her on a beyond control charge. Because A.S. was never notified that she was charged with being beyond control, she was not prepared to present a defense and cross-examine witnesses on that charge at the review hearing for her habitual truancy status offense. A Cabinet worker testified at the hearing for the Commonwealth. One question the court asked the Cabinet worker was whether she knew what the dangers of Chlamydia were, considering that the Commonwealth had obtained medical reports stating that A.S. had twice been treated for the dis-

---

4. Kentucky Rule of Civil Procedure.

ease. The Cabinet worker stated that she did. When defense counsel questioned the witness's qualifications to testify on the matter, the Cabinet worker responded by stating that she had been a receptionist in a gynecologist's office for five years.

█ Additionally, the circuit court permitted the attorney for the Commonwealth to summarize for the court what the Commonwealth's remaining witnesses would testify to, but the court did not require the Commonwealth to actually call and question any of those witnesses under oath, which means that A.S. was not given a chance to cross-examine any of them. Again, due process must be provided to juveniles charged with status offenses. See K.F., 274 S.W.3d at 459. This was clearly a due process violation for the circuit court to hold this hearing without permitting A.S. to properly present a defense and cross-examine witnesses, and for the circuit court to ask medical questions of the Cabinet worker who it appears was not qualified to answer such questions. Therefore, the court's decision must be reversed.

## C. MEDICAL RECORDS

█ Finally, A.S. contends that her medical records were disclosed without her authorization. In her appellate brief, she alleges as follows:

> Disclosure o[f] medical records without a HIPAA release signed by the patient is allowed in judicial proceedings under two circumstances. The first allows disclosure in response to a court order. The second is "i[n] response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribu-

nal." 45 C.F.R. § 164.512(e)(1)(ii). When a request is made under the second scenario, there are two qualifications. Documents may be released absent a court order when assurances have been made that the person whose information is being sought has been notified or a good faith effort has been made to notify that person. Alternately, the disclosure may be made without permission if the party seeking the information has agreed to a protective order.

Based upon the record before us, the Commonwealth obtained the medical records in response to a subpoena that was not accompanied by a court order. Further, it does not appear that assurances were made that A.S. had been notified or a good faith effort had been made to notify her before the medical records were released. Moreover, the Commonwealth did not make reasonable efforts to secure a qualified protective order before the medical records were disclosed. See Caldwell v. Chauvin, 464 S.W.3d 139, 151 (Ky. 2015) (citing 45 C.F.R. § 164.512(e)(1)). Therefore, it appears based upon the record before us that the disclosure of A.S.'s medical records was in error.

Accordingly, the order of the Boyle Circuit Court is reversed and the case is remanded.

ALL CONCUR.