RENDERED: JUNE 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0432-DGE

JAMES LYNCH          APPELLANT

V.

ON APPEAL FROM THE COURT OF APPEALS
NO. 2023-CA-1445
GALLATIN CIRCUIT COURT NO. 23-CI-00090

COMMONWEALTH OF KENTUCKY;          APPELLEES
AND HONORABLE MARCIA THOMAS,
GALLATIN DISTRICT JUDGE

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING</u>**

A writ of prohibition is an extraordinary remedy to be granted only in rare circumstances and under a certain set of conditions. One path to a writ requires a showing "that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). When considering a writ of this type, a court must first concern itself with the prerequisites—no adequate remedy on appeal and great and irreparable harm—before consideration of the merits. *Caldwell v. Chauvin*, 464 S.W.3d 139, 145 (Ky. 2015). "Even if the requirements are met and error

found, the grant of a writ remains within the sole discretion of the Court." *Id.* at 145-46.

Here, the Commonwealth seeks a writ of prohibition against Judge Marcia Thomas of the Gallatin District Court after the court excluded the Commonwealth's evidence of a failed horizontal gaze nystagmus ("HGN") test in its prosecution of a DUI case against James Lynch. The Commonwealth contends the district court violated the rules of evidence and our case law by requiring expert testimony for the HGN test. However, because we hold the Commonwealth failed to meet one of the prerequisites for issuance of a writ, that being great and irreparable harm, we do not reach the merits and reverse the Court of Appeals and reinstate the order of the Gallatin Circuit Court denying the writ of prohibition.

**Factual and Procedural Background**

In April of 2022, Lynch was stopped under suspicion of driving under the influence. During the stop, the officer directed Lynch to perform five standardized field sobriety tests ("SFST"s), including the HGN test. The HGN test is based upon the complex dance of muscle movements required to maintain focus on a single, stationary object not directly in front of an individual.

> Without continual input from the neural integrator (part of the oculomotor control center), the eyes cannot be held away from primary gaze (straight ahead). The neural integrator is brought into play for any smooth pursuit or gaze shift that takes the eyes away from the primary gaze position. Like the smooth pursuit circuits, it appears to be highly susceptive to anomalies in the nervous system, including the presence of alcohol. These result in a drift of the eyes off the intended target, followed by a saccade

2

[sudden rapid movement] to bring the eye back on target. Together, these movements constitute gaze nystagmus (GN).

Steven J. Rubinzer, et al., *Horizontal Gaze Nystagmus: A Review of Vision Science and Application Issues*, 55 J. FORENSIC SCI. 394, 395 (Mar. 2010). The test itself is a multi-part process:

> To perform HGN, the police officer instructs the suspect to look at a stimulus, typically a pen, held 12–15 inches (30.5–38.1 cm) in front of the face and slightly above eye level. The subject is to keep the head still, following the stimulus using only the eyes. After two initial passes to ascertain that the eyes are tracking together and checking for equal pupil size (a screen for abnormal neurological or eye muscle conditions), the officer passes the stimulus from the center of the visual field to the officer's right (suspect's left) in a straight, smooth motion out to the maximum angle of gaze. The recommended speed is about 2 sec from the centerline to the periphery, or about 30°/sec. This motion is designed to assess breakdown of smooth pursuit, as manifested by the eyes falling behind the target and saccades to bring the eyes back to the target. Next, the officer is to hold the stimulus as far to the side as the subject can focus and look for distinct (large amplitude) and sustained (at least 4 sec) nystagmus at maximum deviation (DSNMD). Lastly, the officer returns the stimulus to the midline and slowly moves it laterally, at approximately 10°/sec, looking for onset of sustained gaze nystagmus before 45° of lateral deviation. In the most recent training materials, NHTSA instructs students to estimate 45° by moving the stimulus to the side a distance equal to the distance to the subject. A secondary guideline, which was the only one before 2006, is to move the stimulus to align with the tip of the shoulder. This approach will usually result in gross underestimation of 45°, although this works to the advantage of the suspect.

> Each procedure is repeated once. The subject is scored one point for each of the "clues" described for each eye; the presence of four clues is taken as evidence of intoxication. There is no guidance about how to score a clue that is present during one of the two administrations. Students are taught that several medical conditions (brain tumors, brain damage, disease of the inner ear) may produce nystagmus but are told these are uncommon among suspects they will encounter. Environmental conditions (wind, dust, etc. irritating the suspect's eyes; visual distractions) are also noted as potential problems.

*Id.* Lynch showed six of six clues of impairment on the HGN test and exhibited lesser signs of impairment on each of the other four tests. Lynch was arrested and charged with driving under the influence, first degree.

In February 2023, Lynch moved the Gallatin District Court to exclude the HGN test in limine. Lynch argued the test was not reliable and inadmissible without foundational testimony from an expert witness. The Commonwealth contended that officers are not required to be qualified as experts before testifying to the results of an SFST. The district court agreed with Lynch, finding,

1. That the Commonwealth would produce evidence from the testimony of the arresting officer pertaining to certain field sobriety tests performed by the Defendant.
2. That the Commonwealth would produce evidence of the horizontal gaze nystagmus (HGN) test through only the observation and testimony of the arresting officer.
3. That the Commonwealth's witness, the arresting officer, is not a qualified expert witness.
4. That the Commonwealth has indicated that they will not produce any expert testimony in the case.
5. That the HGN is a scientific test that will take into account many factors in both the way it is administered by the officer and the individual Defendant's ability to perform, which only a qualified expert can testify to and explain to the jury.
6. That the HGN falls under the requirements set forth in KRE[1] 702 and must be subject to a *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)] hearing.
7. That the Commonwealth has not requested a *Daubert* hearing and has indicated there will be no expert testimony at trial.

The Commonwealth filed a motion to reconsider and following its denial began an original action in the Gallatin Circuit Court for a writ of prohibition.

---

[1] Kentucky Rules of Evidence.

The circuit court denied the writ, finding one of the prerequisites for issuance of a writ of this variety, the presence of great injustice or irreparable injury, had not been met because the arresting officer administered other SFSTs and made other observations that could be used against Lynch at trial. Although the circuit court found the petition lacked a required element, it continued on to address the merits of the district court's decision to exclude the HGN test, finding that the HGN test was fundamentally scientific in nature and the district court did not err in requiring expert testimony. The Commonwealth appealed to the Court of Appeals.

The Court of Appeals reversed. First, the court held that the Commonwealth had shown great injustice or irreparable injury sufficient to justify consideration of the merits of the writ. It reasoned that in the absence of the HGN test, the remaining evidence against Lynch was significantly weaker, sufficient to pass the irreparable injury precondition. The Court of Appeals next held the exclusion of the HGN test was error, relying on prior precedent from this Court as well as the Court of Appeals' prior decisions. Accordingly, the HGN test was deemed admissible without expert qualification so long as the officer was properly trained to administer the test and the test was properly performed. Lynch then sought discretionary review with this Court, which we granted.

## Analysis

Writs of prohibition are extraordinary remedies that "we have always been cautious and conservative both in entertaining petitions for and in

5

granting such relief." *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)).

> [C]ourts are decidedly loath to grant writs as a specter of injustice always hovers over writ proceeding. This specter is ever present because writ cases necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants.

*Ortiz v. Commonwealth*, 630 S.W.3d 714, 716 (Ky. 2021) (quoting *Southern Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 925 (Ky. 2013)). We recognize two classes of writ, the first where a court is acting outside of its jurisdiction and the second where that court is acting within its jurisdiction, but in error. Only the second class of writs concerns us here.

A writ of the second class may be properly granted upon a showing "that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Commonwealth v. Shaw*, 600 S.W.3d 233, 237 (Ky. 2020) (quoting *Caldwell*, 464 S.W.3d at 145)). Accordingly, we are called upon to find three elements: (1) the lower court is acting or about to act erroneously; (2) the party seeking the writ has no adequate remedy by appeal; and (3) the seeking party would suffer great injustice or irreparable injury if denied relief.

Although in most cases we review the grant or denial of a writ for abuse of discretion, in some instances multiple standards of review are appropriate:

> [I]n most of the cases under the second class of writ cases, i.e., where the lower court is acting within its jurisdiction but in error, the court with which the petition for a writ is filed only reaches the

6

decision as to issuance of the writ once it finds the existence of the "conditions precedent," i.e., no adequate remedy on appeal, and great and irreparable harm. If [these] procedural prerequisites for a writ are satisfied, whether to grant or deny a petition for a writ is within the court's discretion.

But the requirement that the court must make a factual finding of great and irreparable harm before exercising discretion as to whether to grant the writ then requires a third standard of review, i.e., clear error, in some cases. This is supported by the fact that the petition for a writ is an original action in which the court that hears the petition, in this case the Court of Appeals, acts as a trial court. And findings of fact by a trial court are reviewed for clear error. Therefore, if on appeal the error is alleged to lie in the findings of fact, then the appellate court must review the findings of fact for clear error before reviewing the decision to grant or deny the petition.

*Id.* (quoting *Grange Mut. Ins. Co.*, 151 S.W.3d at 810). In the case where, as here, the writ action originated in the circuit court we apply our standard of review to the circuit court's ruling, not the holding of the Court of Appeals. *Cf. Id.* (applying clear error review for contested facts in a writ action because "the petition for a writ is an original action in which the court that hears the petition, in this case the Court of Appeals, acts as a trial court.").

Because the facts underlying the writ are undisputed, we need ask only whether the circuit court abused its discretion in denying the writ.

[U]ltimately, the decision whether or not to issue a writ of prohibition is a question of judicial discretion. So review of a court's decision to issue a writ is conducted under the abuse-of-discretion standard. That is, we will not reverse the lower court's ruling absent a finding that the determination was arbitrary, unfair, or unsupported by sound legal principles.

*Ortiz*, 630 S.W.3d at 717 (quoting *Appalachian Racing, LLC v. Commonwealth*, 504 S.W.3d 1, 3 (Ky. 2016)).

7

In addressing second-class writs, we are obligated to treat the required finding of great injustice and irreparable harm as a "condition precedent to contemplation of the merits underlying a writ petition." *Caldwell*, 464 S.W.3d at 145.

> Strict adherence to these prerequisites "is a practical and convenient formula for determining, prior to deciding the issue of alleged error, if petitioner may avail himself of this remedy." These strictures evince a reluctance to reach the merits of alleged errors in writ proceedings. Indeed, the test that must be satisfied before the Court may analyze the alleged error was designed expressly to limit "the number of writ cases that proceed to the merits of the controversy" because writ proceedings "necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants." It bears repeating that the issuance of a writ is inherently discretionary. Even if the requirements are met and error found, the grant of a writ remains within the sole discretion of the Court.

*Id*. at 145-46. Accordingly, we begin—and ultimately end—our analysis by addressing whether or not the Commonwealth has shown great injustice or irreparable injury if we were to deny the writ.

The factual groundwork is simple: In the absence of the HGN test, the Commonwealth will have the four remaining SFSTs and the officer's observations left in their evidentiary quiver. The circuit court felt that evidence was not markedly weaker than what the Commonwealth had before and that the Commonwealth could still proceed to trial, if it so desired. The Court of Appeals recognized the remaining SFSTs, but felt the value of the HGN test was such that its exclusion irreparably undermined the Commonwealth's case. Having reviewed the matter, we hold the circuit court did not abuse its discretion in denying the writ.

8

We first acknowledge that writs of this sort rarely ascend to our level for review. To do so would involve taking a misdemeanor case, filing an original action in the circuit court for the writ and then subsequently appealing that writ all the way to the court of last resort. Suffice it to say, most parties find little merit in litigating so intensively a matter that would in most cases be relatively minor. The result of this is that we are left with little precedent to guide our review. Fortunately, what little we do have is instructive.

In *Ortiz*, we were called upon to assess irreparable harm in another DUI case. There, officers responded to a call of a vehicle operating on the wrong side of the road. As police approached the vehicle, they smelled alcohol on the driver. Officers then performed three SFSTs—the specific tests are not specified—all of which the driver failed. A preliminary breath test showed the presence of alcohol. Ortiz was taken to the hospital for a blood draw and was read the implied consent warning aloud in English. Ortiz agreed to have his blood drawn and it showed a significantly elevated level of alcohol in his system. Ortiz, however, did not actually understand English and prior to trial the district judge suppressed the blood draw because Ortiz was not meaningfully informed of his rights. The Commonwealth sought a writ in the circuit court which was denied. The Court of Appeals reversed and we granted discretionary review.

We denied the writ, holding the Commonwealth had not shown great injustice or irreparable injury. We opined,

> While a blood test is compelling evidence, it is not strictly
> necessary to try a DUI case. The district court makes clear in the

9

May 10, 2017 Order, which granted Ortiz's motion to suppress, there was (1) probable cause for Officer Eggleston to initiate the stop due to the careless or reckless manner of Ortiz's driving; (2) reasonable and articulate suspicion for Officer Eggleston to begin a DUI investigation; and (3) probable cause for Officer Eggleston to effectuate a DUI arrest of Ortiz. These determinations were based on a totality of the circumstances analysis, specifically the initial call reporting a vehicle fitting the description of Ortiz's vehicle, Officer Eggleston's firsthand observation of Ortiz driving off the shoulder, the smell of alcohol Officer Eggleston detected on Ortiz and in the car, and Ortiz's failure to pass the field sobriety tests. This evidence has not been suppressed. The Commonwealth can use all of it in trial when prosecuting Ortiz. Ortiz's blood test, while useful, is not the gravamen of the Commonwealth's case. Thus, there has been no great injustice or irreparable harm done.

*Ortiz*, 630 S.W.3d at 717. Our decision in *Ortiz* guides our holding today.

Similar to *Ortiz*, we recognize that an HGN test may be compelling evidence. How compelling seems to be a matter of some contention between the parties; both seem to want to have their proverbial cake and eat it too. The Commonwealth seems to contend the HGN test is the lynchpin of the entire SFST battery and its exclusion renders the remainder of the tests worthless. Simultaneously, it is at pains to describe the test as utterly quotidian; scientific, but not so scientific as to require expert testimony, just one tool at an officer's disposal. Lynch, similarly, sees the test as having evidentiary value worthy of extra guardrails to prevent its erroneous inclusion, but also so fundamentally unsound that it provides little weight to the Commonwealth's case. In any case, the HGN test is of less value than the blood draw at issue in *Ortiz* and ultimately we need not resolve this conundrum because even if the test is treated as particularly compelling, its exclusion would not merit the issuance of a writ.

10

Here, in the absence of the HGN test, the Commonwealth will still be able to put on testimony as to Lynch's failure of the remaining SFSTs (the entirety of the test, as far as the jury would be concerned) as well as his observations of Lynch outside of the testing protocol, which, we assume, were at minimum sufficient to establish probable cause to stop Lynch and to then investigate Lynch for DUI. In the days before regular blood draws and use of the HGN test, this evidence would have more than sufficed to prosecute a simple DUI. *See* Steven J. Rubenzer, The Standardized Field Sobriety Tests: A Review of Scientific and Legal Issues, 32 LAW AND HUM. BEHAV. 293, 295 (Aug. 2008) (detailing the development of the three major SFSTs—the HGN, walk and turn, and one leg stand—and noting that with the exception of the HGN test, "[t]he other tests. . . were face valid tasks that have been used by police for decades."). In this instance, we agree with the district judge that "[t]he Commonwealth cannot claim irreparable injury when evidence is suppressed merely because they now have the duty to reevaluate the case and determine how to move forward with less evidence than first expected." Exclusion of the HGN test does not create "incalculable damage to the applicant", *Hoskins*, 150 S.W.3d at 19 (quoting *Litteral v. Woods*, 223 Ky. 582, 4 S.W.2d 395 (1928)), to justify issuance of a writ. The evidence remaining for the Commonwealth is sufficient for them to move forward with prosecution. Given the presence of the other evidence against Lynch and the continued viability of the case against him, we hold the circuit did not abuse its discretion in finding the Commonwealth has failed to establish great injustice or irreparable harm.

11

Because we find the Commonwealth has failed to meet one of the prerequisites for a writ, it would be inappropriate for us to address the merits at this time.

Finally, although no party makes a meaningful effort to argue the point, we briefly address the applicability of the "certain special cases" exception to the requirement of irreparable harm.

> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration.

*Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 616 (Ky. 2005) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)). Although we have described the exception as supplanting the irreparable injury requirement, in fact it merely shifts the focus: "in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury", rather than the party seeking the writ. *Bender*, 343 S.W.2d at 801. "We have tended to apply this exception only in those limited situations where the action for which the writ is sought would blatantly violate the law, for example, by breaching a tightly guarded privilege or by contradicting the clear requirements of a civil rule." *Indep. Order of Foresters*, 175 S.W.3d at 616-17.

Here, the error complained of by the Commonwealth does not merit review under the certain special cases exception. Forcing the Commonwealth to move a case forward without one piece of evidence does not threaten the administration of justice writ large. The district court did not blatantly violate

12

the law of the Commonwealth, even if it may have violated custom, nor did it breach a privilege or clearly contradict a custom.[2] Nor does allowing the exclusion of the HGN test cause irreparable harm to the administration of justice. It may, in some instances, force the Commonwealth to take the additional step of finding an expert to lay a foundation for the HGN test in future cases, but inconvenience is not synonymous with irreparable harm. "[T]hese 'certain special cases' are. . . rare exceptions", *Trude*, 151 S.W.3d at 808, and what the Commonwealth has set forth does not merit consideration as one of those exceptions.

## Conclusion

For the forgoing reasons, we reverse the Court of Appeals opinion and remand to the Gallatin Circuit Court for reinstatement of the order denying the Commonwealth's petition for writ of prohibition.

All sitting. Lambert, C.J.; Goodwine, Keller, Nickell, and Thompson, JJ., concur. Bisig, J., dissents by separate opinion.

BISIG, J., DISSENTING: Respectfully, I dissent from the Majority Opinion and would affirm the Court of Appeals in full. The Majority Opinion allows the exclusion of a field sobriety test long recognized by the National Highway Traffic Safety Administration for use in prosecutions involving allegations of operating a motor vehicle under the influence. This represents a seismic shift in the

---

[2] We do not intend this to mean that the district court did not act in error, only that a cursory look at that court's actions reveal no *blatant* violations of the law or *clear* contradictions of the rules. As already noted, we do not reach the merits in this matter and reserve judgment on the issue.

13

prosecution of DUI cases. Without venturing into a specific level of suspected intoxication, officers should be able to provide testimony as to their observations regarding the performance of the suspect without further expert testimony. The horizontal gaze nystagmus test properly administered by a trained law enforcement officer is proper circumstantial evidence of impaired driving. The testifying officer is subject to cross-examination. Defendants are free to offer rebuttal testimony, including other potential causes for nystagmus. The Majority Opinion erroneously requires a scientific expert be retained by the Commonwealth in this case prior to the introduction of HGN testimony. I agree with the Court of Appeals and find the Commonwealth met the writ standard and the trial court erred in excluding this evidence.

COUNSEL FOR APPELLANT:

Timothy G. Arnold
Assistant Public Advocate

COUNSEL FOR APPELLEE,
COMMONWEALTH OF KENTUCKY:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General

APPELLEE:

Hon. Marcia Thomas
Gallatin District Judge

14